Daniel McAuliffe (Arizona Bar No. 003435)
dmcauliffe@swlaw.com
Snell & Wilmer L.L.P.
One Arizona Center
Phoenix, AZ 85004-2202
Telephone: (602) 382-6272
Facsimile: (602) 382-6070
Co-Counsel for Defendant, H. James Dial

Richard T. Mullineaux (Indiana Bar No. 9874-22)
rmullineaux@k-glaw.com (Motion for Pro Hac Vice status pending)
R. Jeffrey Lowe (Indiana Bar No. 21508-22)
jlowe@k-glaw.com (Motion for Pro Hac Vice status pending)
Kightlinger & Gray, LLP
One Commerce Square
4106 Charlestown Road
New Albany, IN 47150
Phone: (812) 949-2300
Facsimile: (812) 949-8556
Co-Counsel for Defendant, H. James Dial

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., a non-profit Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>John Doe, an Internet website administrator; Jane Does 1-X, Internet website bloggers and Members of Best Western International, Inc.; John Does 1-X, Internet website bloggers and Governors of Best Western International, Inc.,<br><br>Defendants | Case No. CV06-01537-PHX-DGC<br><br>**DEFENDANT H. JAMES DIAL'S RESPONSE TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND MOTION TO STAY ALL DISCOVERY PENDING RESOLUTION OF THIS MOTION AND RULE 26(f) CONFERENCE** |

The Defendant, H. James ("Jim") Dial ("Dial"), by counsel, hereby objects to the Plaintiff's Motion for Expedited Discovery and Moves to Stay all Discovery until the Parties conduct the Rule 26(f) Conference required by the Federal Rules of Civil Procedure.[*]

---

[*] The Complaint filed in this action by Best Western International ("BWI") names only a series of "John Does" as defendants, perhaps in an effort to have BWI's Motion for

The Plaintiff seeks to serve supoenas on Indiana residents and Delaware Corporations and notices to take depositions in Kentucky of the Indiana residents and Pennsylvania of the Delaware Corporations. Despite the obvious procedural defects in that practice, Plaintiff has sought leave of the Court to conduct said discovery prior to the Rule 26(f) Conference required by the Federal Rules of Civil Procedure. The Plaintiff claims that if it is not allowed to conduct the discovery prior to a Rule 26(f) Conference, it will be greatly prejudiced.

The analysis of the Plaintiff's request starts with Federal Rule of Civil Procedure 26(d) which states "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Thus, the analysis starts with a flat prohibition against the type of conduct the Plaintiff is attempting to engage in. The effect of Rule 26(d) is that "a party [may] not 'serve' discovery, it may not even 'seek' discovery from any source until after the Rule 26(f) conference." Riley v. Walgreen Co., 233 F.R.D. 496, 499 (S.D. Tex. 2005). In Riley, the Plaintiff argued that Rule 26(d) was a rule of abatement and that any discovery served prior to the Rule 26(f) conference was held in abeyance until after the Rule 26(f) conference. Id. The District Court flatly rejected that argument, confirming that Rule 26(d) prohibits any form of discovery prior to the Rule 26(f) conference absent an order of the court or agreement of the parties. Id.

Faced with that background, the Plaintiff asks the Court to make an exception for it and use its discretion to adopt an exception to the rule. The Plaintiff cites the Court's decision in Yokohoma Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612 (D. Ariz. 2001) for the proposition that the Court has the discretion to grant leave to permit expedited discovery. An important premise to be taken from the Yokohoma Tire opinion,

---

Expedited Discovery be heard and considered without opposition. Mr. Dial is a member of at least one, and perhaps more than one, of the categories of fictitious defendants named in BWI's Complaint, and believes BWI is fully aware of that fact. In any event, Mr. Dial hereby enters his appearance in the action, as one of the defendants named fictitiously, for all purposes, including resisting BWI's improper request for expedited discovery and seeking eventual dismissal of this action for failure to state a claim on which relief can be granted and/or lack of subject matter jurisdiction.

however, is that "ex parte motions are rarely justified." Id. at 613. Because of that general rule, the Court found, in order for an ex parte motion to be justified, the moving party must show the Court evidence that its case "will be irreparably prejudiced if the underlying motion is not heard pursuant to regular noticed motion procedures" and the moving party must establish that it has clean hands with regard to the reason for the crisis that requires ex parte relief. Id. Then the Court analyzed whether it would require a more stringent standard or a good cause standard for expedited discovery. Id. at 613-14. The Court adopted the good cause standard and created a presumption that the opposing party is entitled to notice and an opportunity to be heard before the motion is ruled upon. Id. at 614. Applying that test, the Court analyzed Yokohoma's request for ex parte relief and found it lacking because there was no reason Yokohoma could not send notice to the Defendant of its request to perform expedited discovery. Id. The same result should pertain here.

The Plaintiff also cites the Court to Semitool v. Tokyo Electron American, Inc., 208 F.R.D. 273 (N.D. Cal. 2002) to support its argument that it should be allowed to do something proscribed by the Federal Rules of Civil Procedure. In Semitool, the plaintiff was claiming patent infringement and, two months into the case, after the defendant apparently had already appeared, sought discovery from the defendant and third parties. Id. at 274. The Court in California adopted the good cause test from Yokohoma and found that good cause "may be established when the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id. at 276. The Court found that because the parties were not contesting the relevance of the material requested, that it was only going to speed up the discovery by approximately three weeks and that the defendants knew about the request for approximately a year prior to the suit being filed, there was good cause to order the discovery and no prejudice to the defendant. Id. at 276-77.

To be sure, the Motion for Expedited Discovery is not now being brought on an ex parte basis, but that is a happenstance resulting entirely from the fact that BWI improperly

issued and served Mr. Dial with a subpoena to appear for a deposition without the requisite leave of Court. However, there are potentially other Defendants who have no notice of what BWI is attempting to do and would wish to prevent it. That should be reason enough to deny the motion.

Dial believes that the entire reason the Plaintiff is attempting to conduct the discovery in this fashion is that it does not permit objection by persons who might have standing to object to the information being discovered. The person or persons who posted material on the blog obviously want to protect their right to anonymity. Allowing the Plaintiff to conduct the discovery in the manner requested prevents the bloggers from objecting and inadvertently waives their right to anonymity. The bloggers would have no reason to know that information is being requested about them and no idea that they would need to object to protect their identity. BWI says the requests will cause no prejudice to the Defendant, but in fact it will cause great prejudice to bloggers who may be potential Defendants because they will lose the opportunity to object to their identity potentially being revealed.

Dial believes that is the reason why the Plaintiff has captioned the suit in the fashion it did. BWI knows or has a very good idea who the site administrator is, but yet it left that person in their caption as a John Doe. That of course effectively prevents that person from being able to object to BWI's request for early discovery. Dial also believes BWI knows some, if not all, of the Member Bloggers and Governor Bloggers, but yet BWI names no one. The reason is because they do not want any of those Member Bloggers or Governor Bloggers to object to the early discovery. Dial certainly finds it odd that he, his wife, and Jim Furber were the only individuals who were subjects of BWI's subpoena requests and that there was only one IP address that was identified in the subpoenas. Dial is targeted as a subpoena recipient, BWI alleges that Dial has information about who the site administrator is, Dial is a member in BWI, but yet he is not named as a party. The obvious reason for this anomalous behavior is that BWI wants to secure relief on an ex parte basis.

Additionally, it is apparent to Dial that BWI's real objective in the lawsuit is shutting down the blog. BWI is a member-run organization, instead of a franchisor-franchisee organization that many see with hotel operations. Each member has a vote in determining how the business is going to be run. Recently, amendments to the by-laws were proposed by the board of directors and district meetings were called by some of the directors with the thought being that the directors would tell the members how to vote. The proposed amendments, however, clearly signaled the start of a change of BWI from a member-run organization to more of a franchise operation with the board of directors having more and more control over how individual members run their individual operations. Instead of blindly following the board of directors and being told how to vote, some members sought out information and wished to discuss the actual merits of the proposed by-law changes. The blog was created to accommodate that interest. The blog has become a marketplace for ideas and discussion about the way BWI is being run and the proposed amendments. Not only are members posting material on the blog, but directors and representatives of the directors are posting material on the blog debating the merits of the proposed amendments. The board has filed this suit asking the Court to shut down the blog before a final vote is tabulated. The board knew the numbers of the votes and knew prior to filing suit that the proposed amendment that changed the way BWI would be run were going to be defeated. BWI now wants to shut down the blog to chill the First Amendment rights of the bloggers and to pave the way to getting the board's platform passed.

There is no real threat of injury to the Plaintiff herein and there is substantial prejudice to the potential Defendants who may inadvertently have their constitutional rights waived without any act on their part and without any opportunity for notice or objection. The constitutional rights of anonymous commentators are something the Plaintiff is aware of because the Plaintiff cited the leading case regarding this issue in its Memorandum in support of its Motion, Doe v. Cahill, 884 A.2d 451, 456 (Del. 2005). Plaintiff cites Doe for the proposition that the *First Amendment* does not protect

defamatory speech. The Plaintiff ignores, however, that the case is really about what standard the Plaintiff herein must meet in order to perform the discovery it wishes to conduct.

John Doe No. 1 anonymously posted allegedly defamatory remarks about Cahill on an internet blog. Id. at 454. In an attempt to serve Doe, Cahill served a third party subpoena on an Internet Service Provider ("ISP"), Comcast Corporation, that owned Doe's IP address. Id. Cahill retrieved Doe's IP address and obtained a court order requiring Comcast to reveal Doe's identity. Id. Comcast notified Doe of the court order and Doe filed an emergency protective order seeking to prevent Cahill from learning his identity. Id. The trial court denied Doe's motion for a protective order finding that the plaintiff established a good faith standard to compel the disclosure of the identity of an anonymous Internet user. Id.

The Delaware Supreme Court began its analysis by finding that the internet has created the true marketplace of ideas, greater than anything the framers of the Constitution could have imagined, and in doing so created a forum for anonymous voices. Id. at 456. It found that the First Amendment protects Internet speech even if said speech is anonymous, likening it to anonymous pamphleteering, an honorable traditional method of dissent. Id. Thus, the right to speak anonymously must be protected. Id. at 456 n. 14.

On the other hand, as the Plaintiff points out in its Memorandum, the Constitution does not protect defamation. Id. Thus, the court found its role was to find a balance between a person's constitutional right to post anonymously over the Internet with another's right to safeguard his reputation. Id. Cahill ask the court to adopt the good faith standard adopted by the trial court. The Supreme Court, however, flatly rejected Cahill's invitation and adopted a summary judgment standard that a defamation plaintiff must satisfy before obtaining the identity of an anonymous Internet poster who has been named as a defendant. Id. at 457

The Delaware Supreme Court found that setting the standard any lower would chill potential posters from exercising their First Amendment rights to post anonymously in

such a way that the comments would be filtered or stop altogether. Id. The court also recognized that the real victory in this situation is not proving defamation, but the unmasking of the anonymous poster. Id. Once the anonymous poster is unmasked based on some lesser standard than a summary judgment standard, the plaintiff, instead of pursuing the case, is just as likely to dismiss the case and exact his retribution or retaliation on the speaker extrajudicially. Id. The court found the anonymous poster needs more protection than just having the plaintiff come in and allege sufficiently vague facts to defeat a motion to dismiss. Id. In order to adequately protect the rights of the anonymous poster, a defamation plaintiff must come forward with sufficient facts to defeat a summary judgment motion, before obtaining compulsory process to have that person's identity disclosed. Id. at 460.

The Delaware Supreme Court found support from a New Jersey Court of Appeals case, Dendrite International, Inc., v. Doe, 775 A.2d 756 (App. Div. 2001) which adopted a prima facie requirement which was equivalent to a summary judgment standard. Doe v. Cahill at 459-60. The court revised the Dendrite standard and found the test to be the following:

> (1) The plaintiff must undertake efforts to notify the anonymous poster that he is the subject of a subpoena or application for an order of disclosure, and to withhold action to afford the anonymous defendant a reasonable opportunity to file and serve opposition to the application. In the internet context, the plaintiff's efforts should include posting a message of notification of the discovery request to the anonymous defendant on the same message board as the original allegedly defamatory posting; and
>
> (2) the plaintiff must satisfy the summary judgment standard.

Doe, at 460-61.

Dial believes the Court should adopt this test to adequately protect the interests of the anonymous Internet posters on freewrites.net. He also believes, if given the opportunity, Arizona courts would adopt this test as the proper test. The notification requirement of this test is similar to the request for correction that must be made prior to any defamation case based on newspaper or magazine publication or radio or television broadcast in Arizona. **Ariz. Rev. Stat. Ann** §12-653.02. The statute requires the alleged

defamed person to demand correction in writing and if it is not corrected the plaintiff can recover general, special and exemplary damages if applicable. However, if no correction is requested then the plaintiff is limited to recovering special damages only. The statute seems to show that an attempt to resolve the issue pre-suit with notice to the maker of the alleged defamatory statement is the policy of the state of Arizona and Dial believes the Court should find the Delaware approach to the Plaintiff's discovery is what Arizona courts would adopt if given the opportunity.

In addition, Arizona courts have traditionally found that the Arizona Constitution provides greater free speech protection than that provided by the United States Constitution. Mountain States Telephone and Telegraph Company v. Arizona Corporation Commission, 773 P.2d 455, 459-60 (Ariz. 1989). That being the case, Arizona would likely recognize that a speaker's right to anonymity requires the utmost protection. Therefore, Arizona would likely adopt the test espoused in Doe v. Cahill for determining what the Plaintiff must establish before serving the requested subpoenas.

Applying the Doe v. Cahill test to the present facts, the Plaintiff has failed to allege and cannot allege that it has attempted to notify any poster of its action in this Court or its request for expedited discovery and its attempt to serve subpoenas to have ISP providers, Dial and others provide names of anonymous posters. Dial is aware of no such action by BWI or its representatives. Nor has BWI attempted any other means of notifying the posters of the lawsuit and subpoenas. In fact, BWI has attempted to short circuit any posters' opportunity to respond by having this Court consider its motion for expedited discovery in expedited fashion. The Court should deny the Motion for Expedited Discovery and stay all discovery until the Court determines whether BWI has established facts and evidence sufficient to establish it can defeat a summary judgment motion on its supposed claims.

The second element of the Doe v. Cahill test has not been satisfied by the Plaintiff as it provides no facts or evidence to support any of its allegations. The allegations by themselves will not allow BWI to survive a summary judgment motion particularly given

- 8 -

their conclusory nature. Plaintiff articulates a conclusion that participants in the blog have revealed proprietary information and/or engaged in trademark infringement, but proffers not a single fact in support of that conclusion. If, however, the Court believes that the allegations of the Plaintiff's Complaint by themselves satisfy the summary judgment standard, Dial submits the following arguments why the Plaintiff's Complaint will never get past the summary judgment stage.

The Claims against the Site Administrator will be barred by the Communications Decency Act, 47 U.S.C. 230. [hereinafter the Act]. The Act provides immunity for any "provider or user of an interactive computer service" for any action taken with regard to providing anything provided by another "information content provider." In essence, the Act provides immunity to a website operator as long as the website operator is not creating the content that goes on the website. It provides that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. 230(c)(1).

### Breach of Contract Claim Against Site Administrator, Member Bloggers and Governor Bloggers

BWI's claim against these Defendants for breach of contract is unfounded and not supported by the evidence that will eventually be shown in this case. The Complaint alleges the Defendants have used BWI's equipment to operate the blog. The claim is that the Defendants are misusing BWI's equipment, computers, fax machines, etc., by operating the blog. Notwithstanding the fact that the blog content page says not to use Best Western computers or work computers to post (see Exhibit 1 attached hereto), the content of the blog is discussion about the way BWI is run and what effect proposals by the board of directors will have on the individual member's properties. Such activity is not a breach of any contract between the Members or Governors and BWI so use of a computer at an individual hotel to conduct such activity is not a breach of contract.

Additionally, BWI claims the Members and Governors are improperly using BWI's Marks and Confidential Information. Initially, the Membership Application that

each member signs gives the Member a license to use "in connection with the hotel the Best Western name and those Best Western trademarks, service marks, and identification symbols. . ." (Exhibit A to the Plaintiff's Complaint). A review of the blog shows the only thing that could possibly be recognized as a mark is the name Best Western and that the Members and Governors use of the term Best Western on the blog is "in connection with the hotel." The purpose of the blog is a site where members and headquarters staff meet [virtually] to discuss a range of topics from the "proposed by-law changes" to the "present atmosphere in Best Western." (Exhibit 1 attached hereto). Best Western is set up so that Members vote to determine how BWI is going to be run. In order to have an effective vote, Members need to talk to other members about how proposals might effect how their individual hotel will have to be run. The content of the blog is just that, discussion among members about how BWI and their hotels are to be run. Just because BWI does not like what is being said about their proposed amendments it seeks to shut down the blog and stop its members from talking. However, no mark of BWI is being misused. It is only being used in connection with the operation of a hotel.

     The same argument holds true for the claim that the Members and Governors are misusing confidential information. The Plaintiff does not identify in its Complaint any material that it specifically considers confidential and the contracts, rules and regulations, by-laws give no definition of confidential information. The reason the Plaintiff did not specifically identify the confidential information it alleges the Defendants are misusing is because it cannot identify any information on the blog that would be considered confidential. The Plaintiff obviously had access to the blog and would have the ability to show exactly what each blog posting says. Thus, it would have the ability to identify for the Court what confidential information is posted on the blog. In light of Doe v. Cahill, that is what is required when it requests to conduct expedited discovery to learn the identity of anonymous posters. However, it did not and cannot because none of the information on the blog can be considered confidential information as between the members, governors, directors and other hotel employees that may post on the blog. The

material on the blog is material that should be open and provided to every Member, Governor, Director or other hotel employee so that informed and educated decisions can be made about the future of BWI. There is no contract provision that defines confidential information and no specific contractual provision that prohibits the disclosure of any information. Therefore, the Plaintiff cannot succeed on its breach of contract claims against the Defendants.

### Breach of Implied Covenant of Good Faith and Fair Dealing Against Site Administrator, Member Bloggers and Governor Bloggers

The same arguments from the previous section establish the Defendants did not breach the implied covenant of good faith and fair dealing. The law implies a duty in every contract and "[t]he essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." Beaudry v. Insurance Co. of the West, 50 P.3d 836, 841 (Ariz. App. Div. 1 2002).

The Defendants actions in creating a blog to serve as a marketplace of ideas and a discussion forum does nothing to impair the right of BWI to receive the benefits that flow from the agreements between BWI and its Members. BWI still receives the same benefits that are required under the Agreements, By-laws, and Rules and Regulations. What BWI does not receive as a result of the blog is a rubber stamp from its Members to blindly follow whatever direction the Board of Directors wants to take. The Board has now become composed of some individuals who want to make BWI more like a franchisor than a membership organization. The Board's proposed by-law changes would have helped the Board accomplish that goal by taking away some of the rights of the Members and giving the Board more unilateral power. BWI alleges in paragraphs 35 of its Complaint that it "has begun a crucial phase in its corporate and brand development" and it "has formulated changes to its Bylaws to enable BWI to compete more effectively in the industry in which it competes and to yield increased benefits and profits for the Members' investments in BWI." While the Board does have the power to propose what phase of

brand development BWI is in and what changes it feels are in the best interests of its Members, it is up to the individual Members to determine what is in their best interests. And if the Members determined that the changes proposed by the Board is not in their best interests then they should, instead they are entitled to, discuss how those changes hurt them in an open forum. That is all the blog has done. Discussion of the proposed changes, the reasons for the proposed changes and what effect they may have does not in anyway violate the terms of the Agreements, By-laws, Rule and Regulations or any other document between the Plaintiff and Defendants.

BWI's actions of attempting to restrict its Members and Governor's abilities to discuss changes proposed by BWI are the only actions in the present case that can be seen to violate the implied covenant of good faith and fair dealing. BWI is set up so its Members decide the future of the corporation and how it will be run, not the Board of Directors. BWI, by attempting to shut down the blog, is attempting to prevent its voting constituency from having a forum for discourse regarding BWI's attempted changes in the structure of BWI. The Plaintiff cannot succeed on these claims and their Motion for Expedited Discovery should be dismissed.

### Breach of Implied Contract Against Site Administrator, Member Bloggers and Governor Bloggers

Much the same argument made in the two previous sections applies here. In essence, the Plaintiff claims in these Counts that if it did not have a contract term in all the contracts it had with the Members and the Members did not breach their duty of good faith and fair dealing, then the conduct of BWI and its Members created an implied contract that the Members would not discuss how the business was going to be run amongst each other. The absurdity of that idea notwithstanding, there are no facts that can or will be disclosed that would justify or support such an argument. In fact, the evidence will show just the opposite. Jim Dial had previously assisted in preparing and distributing a newsletter that contained anonymous letters and other articles regarding the state of BWI and its future. He never received the first reprimand despite BWI's knowledge of

the newsletter. Therefore, it could be implied from the acts of the Parties that in fact BWI did not prohibit the type of discussion on the blog. The facts of the case the Plaintiff could provide will not enable it to get past summary judgment on this claim.

### Breach of Fiduciary Duty Against Site Administrator and Governor Bloggers

The Site Administrator and Governor Bloggers have not breached any fiduciary duty owed to the Plaintiff, assuming either owed one in the first place. In fact, they have fulfilled their fiduciary responsibility to other Members to establish the true intent and background behind the proposed Bylaw Amendments and other Board actions. Again, the Plaintiff has failed to establish in its Motion or its Complaint specifically how any of these things happened or the damage associated with said actions. The baseless allegations claim that Site Administrator and Governor Bloggers are out to damage Best Western. The damage claimed is the subjective opinion of the Board. The same opinion is obviously not held by the required amount of Members to pass the proposed Bylaw Amendments.

### Defamation Per Se Against All Defendants

The Plaintiff's claim for defamation will not succeed because the Plaintiff cannot prove that any of the statements on the blog are untrue or defamatory. Additionally, the statements made to the Site Administrator and then posted on the blog are protected by a qualified privilege to make the statements and that privilege has not been abused. As stated above, BWI had access to and has obviously read the blog as can be seen from the subpoenas it wishes to issue. BWI has an idea what statements it feels are defamatory but yet did nothing more than say it has been defamed in the Complaint and this Motion. Additionally, BWI did nothing to separate opinion from allegations of fact, statements of opinion being immune from liability for defamation. Burns v. Davis, 993 P.2d 1119, 1129 (Ariz. App. Div. 1 1999). BWI's failure to advise the Court of what it feels was defamatory and untrue should result in the denial of this Motion. Dial believes BWI will be unable to show that any statements made on the blog are either not opinion or are untrue allegations of fact. Without doing so, BWI cannot succeed on the defamation

1  claim, cannot meet the mandates of Doe v. Cahill and should not be allowed to conduct
2  expedited discovery of any kind.
3      Additionally, the statements made on the website are statements that should be
4  cloaked with a qualified privilege. When a speaker has a duty to speak to his audience on
5  a topic then he should be granted a qualified privilege to make that statement and be
6  shielded from liability for defamation. Roscoe v. Schoolitz, 464 P.2d 333, 336 (Ariz.
7  1970). If a Member knows of something that will affect BWI in any manner, it is that
8  Member's duty to reveal that to his fellow Members so that an educated determination
9  based on knowledge of all facts can be made. As such, Members who have said
10 information have a responsibility to make that declaration and should be immune from
11 suit when making it.

## Trademark Infringement, Unfair Competition and Trademark Dilution Against All Defendants

14  The Plaintiff's Trademark claims pursuant to the Lanham Act must fail because the
15 Defendants' use, if any, of Plaintiff's marks is a noncommercial use, a use specifically
16 excepted by the Act. The Lanham Act, 15 U.S.C. §§1114, 1125(a) prohibits uses of
17 trademarks, trade names and trade dress that are likely to cause confusion about the source
18 of a product or service. Bosley Medical Institute Inc. v. Kremer, 403 F.3d 672, 676 (9th
19 Cir. 2005). Infringement, Unfair Competition and Dilution claims are subject to a
20 commercial use requirement under the Lanham Act. Id. The term commercial use has
21 been defined as in connection with the sale of goods and services. Id.
22      There is no allegation, nor will there be any proof, that the blog is maintained in
23 connection with the sale of goods and services. There are no links to commercial sites,
24 there are no services that can be purchased on the site and there are no goods that can be
25 purchased on the site. Additionally, there will be no proof that the website freewrites.net
26 is causing confusion among potential customers of BWI. No one is going to log on to
27 freewrites.net and believe they are booking a room at a BWI hotel. Accordingly, the use

1  of any BWI mark on the website is a noncommercial use and subject to an exemption
2  from the Lanham Act.

3  Additionally, any state law claim for unfair competition will also be unsuccessful
4  because there is no confusion that the two entities are competing entities. In fact, they are
5  not competing entities. One entity is a vehicle by which Members of the other entity can
6  discuss the other entity. There is no unfair competition under state or federal law and the
7  Plaintiff cannot succeed on its claim in these regards.

**Tortious Interference with Prospective Economic Advantage Against All Defendants**

9  To establish a prima facie claim for tortious interference with a business
10  relationship, BWI must establish a "valid contractual relationship or business expectancy;
11  the Defendants' knowledge of said relationship or expectancy; intentional interference by
12  the Defendants' inducing or causing a breach or termination of the relationship or
13  expectancy; and resultant damage to BWI whose or expectancy has been disrupted.
14  <u>Miller v. Hehlen</u>, 104 P.3d 193, 202 (Ariz. App. Div. 2 2005). The interference must be
15  "improper" before liability will attach and improper means more than advancing a
16  competitor's own economic interests. <u>Id.</u>

17  BWI cannot succeed on this claim. BWI cannot show that any relationship or
18  expectancy has been lost as a result of the blog. BWI cannot show that the Defendants
19  acted improperly in posting on the blog. BWI can attempt to show that the Bloggers
20  disagreed with the Board but that is not improper and is the essence of the corporate
21  structure of BWI. And just because its Members and Board have competing economic or
22  other interests does not mean that any actions of the Defendants are improper.

23  Additionally, the Restatement 2d of Torts provides several factors that weigh in
24  favor of showing that the Defendants conduct herein is not improper. **Restatement 2d**
25  **Torts** §767. The Restatement factors are: the nature of the actor's conduct, the actor's
26  motive, the interests of the other with which the actor's conduct interferes, the interests
27  sought to be advanced by the actor, the social interests in protecting the freedom of action
28  of the actor and the contractual interests of the other, the proximity or remoteness of the

actor's conduct to the interference and the relations between the parties. Id. The nature of the Defendants' conduct is comment on the running of business of which it is a member, conduct which certainly is proper. The interests of its own business are the interests sought to be advanced by the Defendants. Society certainly has an interest in protecting the First Amendment rights of anonymous posters to protect them from retribution by their employer. The relation of Board of Directors to Members certainly supports the right of the Members to make statements about proposals made by the Board. The factors show that the Defendants' conduct has not been improper and further show the Plaintiff cannot succeed on its claim in this regard.

## CONCLUSION

The Plaintiff's Motion seeks to flush out anonymous Internet posters without giving them the right to protect their anonymity protected by the First Amendment. Dial fears that this suit is merely a tactic by which the Plaintiff will find out the identities of these posters and then retaliate against the posters by terminating them from BWI, thereby giving BWI the momentum it needs to pass its proposed Bylaw Amendments. The Court should not allow this and should protect the First Amendment rights of the anonymous posters. When the Court evaluates this case by the standards espoused in Doe v. Cahill, the Court will find the Plaintiff has not established its evidentiary predicate to conduct the requested discovery and deny the Motion.

RESPECTFULLY SUBMITTED this 26th day of June 2006

SNELL & WILMER

s/ Daniel McAuliffe
Daniel McAuliffe (Arizona Bar No. 003435)
dmcauliffe@swlaw.com
One Arizona Center
Phoenix, AZ 85004-2202
Telephone: (602) 382-6272
Facsimile: (602) 382-6070
Co-Counsel for Defendant, H. James Dial

and . . . .

Richard T. Mullineaux (Indiana Bar No. 9874-22)
rmullineaux@k-glaw.com (Motion for Pro Hac Vice status pending)
R. Jeffrey Lowe (Indiana Bar No. 21508-22)
jlowe@k-glaw.com (Motion for Pro Hac Vice status pending)
Kightlinger & Gray, LLP
One Commerce Square
4106 Charlestown Road
New Albany, IN 47150
Phone: (812) 949-2300
Facsimile: (812) 949-8556
Co-Counsel for Defendant, H. JamesDial

I hereby certify that on June 26, 2006, I electronically transmitted the attached document to the Clerk's office using the ECF system for filing. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Cynthia Ann Ricketts
Squire Sanders & Dempsey, LLP
40 Central Avenue, Ste. 2700
Phoenix, AZ 85004-4441
crickets@ssd.com

Sara Kathryn Regan
Squire Sanders & Dempsey, LLP
40 Central Avenue, Ste. 2700
Phoenix, AZ 85004-4441
sregan@ssd.com

By: ___s/Marla Treptow___
Mcaulid\PHX\1852794.1