**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., a non-profit Arizona corporation, | No. CV-06-1537-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| John Doe, et al., | |
| Defendants. | |

Plaintiff Best Western International, Inc. ("BWI") has filed this action against various John Doe Defendants. BWI claims that the Defendants have posted anonymous messages on an Internet site that defame BWI, breach contracts with BWI, breach fiduciary duties, reveal confidential information, infringe BWI trademarks, and constitute unfair competition. Because the Internet messages have been posted anonymously, BWI has been unable to identify the John Doe Defendants.

BWI has filed a motion to conduct accelerated and expedited discovery. Doc. #5. The motion seeks permission to serve subpoenas on various Internet Service Providers ("ISPs") and others before an initial conference is held pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. The subpoenas seek disclosure of the identities of the sponsor for the Internet site as well as individuals who have posted messages. BWI contends that such information is needed before the John Doe Defendants can be served with BWI's complaint and can participate in a Rule 26(f) conference. Alleging that it is suffering irreparable injury as a result of comments posted on the site, BWI seeks expedited discovery and expedited consideration of its motion to conduct the discovery. Doc. #6.

BWI also asks the Court to issue an order requiring the preservation of evidence related to the identities of the John Doe Defendants. Doc. #7. BWI notes that information concerning Internet users typically is retained for only a short period of time. BWI asks the Court to enter an order requiring the preservation of information until it can be obtained through discovery.

One of BWI's proposed subpoenas would be directed to H. James Dial. Mr. Dial has appeared through counsel, identified himself as one of the John Doe Defendants, and filed an opposition to BWI's motion for discovery and a counter-motion to stay all discovery until completion of a Rule 26(f) conference. Doc. #11. BWI has filed a response. Doc. #17.

This order will address four issues: (1) whether BWI has shown good cause to conduct discovery in advance of a Rule 26(f) conference, (2) whether this Court has jurisdiction to rule on the propriety of BWI's proposed subpoenas, (3) what showing BWI must make in order to conduct discovery that implicates First Amendment rights of the John Doe Defendants, and whether BWI has made that showing, and (4) other relevant considerations.

**1.     Good Cause.**

Rule 26(d) provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). The rule makes clear, however, that this limitation can be overridden by court order. *Id.* An order permitting discovery before a Rule 26(f) conference may be issued for "good cause." *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001).

BWI has satisfied the good cause requirement. BWI has established by affidavit that it is unable to identify the John Doe Defendants by means other than the subpoenas. Doc. #9. Although Mr. Dial volunteered that he is one of the John Doe Defendants, the action is brought against an apparently large number of individuals who have posted anonymous messages on the Internet site. The case cannot proceed and a Rule 26(f) conference cannot be held until these Defendants are identified.

In addition, courts have recognized that ISPs typically retain user information for only

a limited period, ranging from a few days to a few months. *UMG Recordings, Inc. v. Does I-IV*, No. 06-0652 SBA (EMC), 2006 WL1343597, at *1 (N.D. Cal. Mar. 6, 2006). The loss of evidence seems particularly possible in this case, as the Internet site expressly states to users that "your identity will be totally and forever withheld *and destroyed*." Doc. #5, Ex. A at 2 (emphasis added).

Because the identities of the John Doe Defendants is necessary for this case to proceed and there is reason to believe that those identities may be lost if discovery is delayed, the Court concludes that BWI has established good cause to conduct discovery before the Rule 26(f) conference. This conclusion does not, however, answer the question of whether discovery should be permitted in light of the First Amendment rights of the John Doe Defendants. That issue will be addressed below.

**2.     The Court's Jurisdiction to Address the First Amendment Question.**

BWI's proposed subpoenas to ISPs and other individuals will be issued by federal district courts in the jurisdictions where those entities and individuals reside. Because only the court issuing a subpoena generally has power to quash it, BWI argues that this Court has no jurisdiction to address the propriety of the subpoenas.

Rule 45(c) does provide that subpoenas should be enforced by the district court which issued them, but this rule "does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery." *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001). General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued. Courts have also recognized that a party's "'discovery rights [in other districts] can rise no higher than their level in the district of trial.'" *Id*. (*quoting Fincher v. Keller Indus., Inc.*, 129 F.R.D. 123, 125 (M.D.N.C. 1990)).

The First Amendment implications of BWI's proposed discovery constitutes a significant issue in this case. Not only are the First Amendment rights of fundamental importance to the John Doe Defendants, but they also will be preserved or defeated by discovery orders. To the extent that Defendants have a First Amendment right to anonymous

1  speech (a right addressed below), the right will be lost if BWI is permitted to learn the
2  speakers' identities through discovery. This right will be at issue in every district where
3  BWI's subpoenas are served. It makes little sense to leave such a central issue to district-by-
4  district determination.

5  The Court concludes that it can and should address the First Amendment issues raised
6  by BWI's discovery motion. As the court noted in *Static Control*, "[t]his issue extends well
7  beyond the matter of a specific subpoena." *Id.* at 434 n.5.

### 3. First Amendment Considerations.

9  BWI is a non-profit member corporation. Doc. #3 at ¶ 9. BWI's members own and
10 operate more than 4,000 hotels and lodging properties under the BWI name and trademark.
11 *Id.* at ¶ 10. BWI's board of directors communicates with BWI members through regional
12 governors who are appointed to oversee specific geographic districts. *Id.* at ¶ 11.

13 BWI's complaint and motions say little about the content of the Internet messages at
14 issue in this case. Mr. Dial asserts, however, that the Internet site was created as a place for
15 BWI members and governors to state their views on various issues concerning BWI.
16 Specifically, Dial asserts that recent proposed changes in BWI's method of operation have
17 drawn extensive comment on the site. The site describes itself as a "site for Best Western
18 members," where members and headquarters staff "can exchange information on a 100%
19 confidential basis." Doc. 5, Ex. A.

20 Several First Amendment principles are relevant.

21 First, the Amendment protects anonymous speech. *See Buckley v. Am. Constitutional*
22 *Law Found.,* 525 U.S. 182, 200 (1999). The Supreme Court has noted that "[a]nonymity is
23 a shield from the tyranny of the majority." *McIntyre v. Ohio Elections Comm'n*, 514 U.S.
24 334, 357 (1995). Indeed, "[u]nder our Constitution, anonymous pamphleteering is not a
25 pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent." *Id*.

26 Second, the protections of the First Amendment extend to the Internet. *See Reno v.*
27 *ACLU*, 521 U.S. 844, 870 (1997). "Courts have recognized the Internet as a valuable forum
28 for robust exchange and debate." *Sony Music Entm't, Inc. v. Does 1-40,* 326 F. Supp. 2d

- 4 -

556, 562 (S.D.N.Y. 2004). "Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox." *Reno*, 521 U.S. at 870. Courts also recognize that anonymity is a particularly important component of Internet speech. "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas [;] . . . the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded." *Doe v. 2 The Mart.com, Inc.*, 140 F. Supp. 2d 1088, 1092, 1097 (W.D. Wash. 2001).

Third, "courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns." *Sony*, 326 F. Supp. 2d at 563 (*citing NAACP v. Ala. Ex Rel Patterson*, 357 U.S. 449, 462 (1958); *NLRB v. Midland Daily News*, 151 F.3d 472, 475 (6th Cir. 1998); *L.A. Mem'l Coliseum, Comm'n v. Nat'l Football League*, 89 F.R.D. 489, 494-95 (C.D. Cal. 1981)).

Fourth, the right to speak anonymously is not absolute. *See McIntyre*, 514 U.S. at 353; *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 59, 555-56 (1985) (First Amendment does not protect copyright infringement); *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) ("Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection."). "Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights." *In re Subpoena Duces Tecum to America On-Line, Inc.*, No. 40570, 2000 WL1210372, at *5 (Va. Cir. Ct. Jan. 31, 2000).

These principles make clear that the John Doe Defendants have a First Amendment right to anonymous Internet speech, but that the right is not absolute and must be weighed against BWI's need for discovery to redress alleged wrongs. To ensure that the First Amendment rights of anonymous Internet speakers are not lost unnecessarily, courts typically require parties to make some showing before obtaining discovery of the speakers' identities. Courts have recognized a range of possible showings. As the Delaware Supreme Court has explained, "an entire spectrum of 'standards' . . . could be required, ranging (in

1 ascending order) from a good faith basis to assert a claim, to pleading sufficient facts to
2 survive a motion to dismiss, to a showing of *prima facie* evidence sufficient to withstand a
3 motion for summary judgment and, beyond that, hurdles even more stringent." *Cahill*, 884
4 A.2d at 457.  BWI urges the Court to adopt the lowest standard – good faith.  Dial suggests
5 the more stringent summary judgment standard.

6       In deciding which standard to apply, the Court must consider the significance of the
7 First Amendment rights at issue in this case.  BWI cites several cases in which plaintiffs sued
8 defendants for illegally downloading music from the Internet.  Although the courts found that
9 the downloading of information was entitled to some protection under the First Amendment,
10 they recognized that downloading was not purely expressive and therefore was entitled only
11 to "limited" First Amendment protection.  *Sony*, 326 F. Supp. 2d at 564; *UMG Recordings*,
12 2006 WL1343597 at *1 ("A person who uses the Internet to download or distribute
13 copyrighted music without permission is engaging in the exercise of speech, but only to a
14 limited extent[.]").

15       The conduct of the John Doe Defendants, by contrast, is purely expressive.  The
16 Defendants are expressing their views on issues of interest to BWI members and governors
17 in a forum specifically designed for an exchange of opinions and ideas anonymously.  Such
18 speech is entitled to substantial First Amendment protection.

19       Given the significant First Amendment interest at stake, the Court agrees with the
20 Delaware Supreme Court in *Cahill*, and concludes that a summary judgment standard should
21 be satisfied before BWI can discover the identities of the John Doe Defendants.  The court
22 in *Cahill* described the test in these words: "Before a defamation plaintiff can obtain the
23 identity of an anonymous defendant through the compulsory discovery process, he must
24 support his defamation claim with facts sufficient to defeat a summary judgment motion."
25 884 A.2d at 460.  This standard does not require a plaintiff to prove its case as a matter of
26 undisputed fact, but instead to produce evidence sufficient to establish the plaintiff's *prima*
27 *facie* case:

28       [T]o obtain discovery of an anonymous defendant's identity under the

> summary judgment standard, a defamation plaintiff must submit sufficient evidence to establish a *prima facie* case for each essential element of the claim in question. In other words, the defamation plaintiff, as the party bearing the burden of proof at trial, must introduce evidence creating a genuine issue of material fact for all elements of a defamation claim *within plaintiff's control*.

*Id.* at 465 (quotations and citations omitted, emphasis in original). The emphasized words "within plaintiff's control" recognize that a plaintiff at an early stage of the litigation may not possess information about the role played by particular defendants or other evidence that normally would be obtained through discovery. But a plaintiff must produce such evidence as it has to establish a *prima facie* case of the claims asserted in its complaint.

BWI's complaint provides an example of why the summary judgment standard is appropriate. The complaint alleges that Defendants have improperly posted confidential BWI information on the Internet site, wrongfully posted BWI's trademark on the site, used BWI's equipment to communicate with the site, deprived BWI of the benefits of its contract with Defendants, and made false statements regarding BWI and its business. Doc. #3 ¶¶ 58-60, 64, 68. But BWI's complaint does not identify a single false statement allegedly made by the John Doe Defendants, identify a single item of confidential information posted on the site by Defendants, describe a single instance where BWI's mark was improperly used, explain how BWI was denied the benefits of its contracts, or explain how BWI equipment was improperly used. The complaint provides no factual support for BWI's claim that Defendants engaged in wrongful conduct not protected by the First Amendment.

At the same time, the Court finds no basis for concluding that BWI's complaint has been asserted in bad faith. Nor, given modern notice pleading standards, would BWI's complaint likely be subject to a motion to dismiss. Thus, if the standard for permitting discovery of the John Doe Defendants' identities required only good faith or the ability to survive a motion to dismiss, BWI's proposed discovery would be permitted and the Defendants' First Amendment right to anonymous speech would be defeated. A good faith allegation of wrongdoing, devoid of factual detail, would suffice.

The Court concludes that more is needed before a defendant's First Amendment rights

1 may be eliminated. The Court must examine facts and evidence before concluding that a
2 defendant's constitutional rights must surrender to a plaintiff's discovery needs. The
3 summary judgment standard will ensure that the Court receives such facts and evidence.

4 Other courts have adopted a multi-part test for determining when plaintiffs should be
5 permitted to discover the identity of anonymous defendants. This test includes "(1) a
6 concrete showing of a *prima facie* claim of actionable harm; (2) the specificity of the
7 discovery request; (3) the absence of alternative means to obtain the subpoenaed information;
8 (4) a central need for the subpoenaed information to advance the claim; and (5) the Doe
9 defendants' expectation of privacy." *UMG*, 2006 WL1343597 at *1 (citing *Sony*, 326 F.
10 Supp. 2d at 564-65). The Court views the first element of this test – "a concrete showing of
11 a *prima facie* claim" – as equivalent to the summary judgment standard. *See Dendrite Int'l.,*
12 *Inc. v. Doe*, 775 A.2d 756, 760 (N.J. App. 2001) ("[T]he plaintiff must produce sufficient
13 evidence supporting each element of its cause of action, on a prima facie basis, prior to a
14 court ordering the disclosure of the identity of the unnamed defendant."). The Court need
15 not address parts (2)-(4) of this test, as they clearly have been established by BWI. The fifth
16 part of the test – the John Doe Defendants' expectation of privacy – should be addressed in
17 the briefing by the parties discussed below.

18 In summary, BWI has not made a sufficient showing to justify discovery that will
19 disclose the identities of the John Doe Defendants. BWI may be able to make such a
20 showing in a renewed motion, but it has not done so in the present motion. The Court
21 therefore will deny BWI's motion for expedited discovery.

22 **4. Other Considerations.**

23 If BWI believes that it can satisfy the summary judgment standard, it may seek to do
24 so in a renewed motion to be filed with the Court on or before **August 18, 2006**. In the
25 meantime, the Court will issue BWI's requested motion regarding the preservation of
26 documents. As noted above, there is reason to believe that the information sought by BWI
27 will not be retained by the ISPs or others from whom BWI will seek discovery. The Court
28 will enter BWI's proposed order to preserve such evidence. The Court notes that Mr. Dial

1 did not oppose the entry of such an order.

2 BWI has asked the Court to require the host of the Internet site to post the preservation
3 order on the site. The Court finds such a requirement unnecessary. BWI may itself make the
4 existence of the order known through its own entry on the site. BWI may also send copies
5 of the preservation order to those from whom it later will seek discovery if the summary
6 judgment standard is satisfied.

7 If BWI attempts to satisfy the summary judgment standard, BWI should give notice
8 to the John Doe Defendants over the Internet site and afford them an opportunity to oppose
9 the discovery. "When First Amendment interests are at stake, we disfavor *ex parte* discovery
10 requests that afford the Plaintiff the important form of relief that comes from unmasking an
11 anonymous defendant." *Cahill*, 884 A.2d at 461. Therefore, "the plaintiff must undertake
12 reasonable efforts to notify the anonymous defendant of the discovery request and must
13 withhold action to allow the defendant an opportunity to respond." *Id.*

14 BWI shall notify the anticipated recipients of its discovery requests, as well as the
15 John Doe Defendants, through entries on the Internet site and other reasonable means, that
16 it is seeking discovery of the Defendants' identities and that the potential discovery recipients
17 and John Doe Defendants may respond to its motion, should they choose to do so, within
18 three weeks of the motion's filing. Because the Court will enter BWI's requested order for
19 preservation of documents, evidence should not be lost while these steps are undertaken.
20 Upon receipt of any responses to BWI's renewed motion and the filing of BWI's reply, the
21 Court will again address the question of whether discovery of the John Doe Defendants'
22 identities should be permitted in this case.

23 **IT IS ORDERED:**

24 1. BWI's motion for expedited consideration of motion to conduct accelerated
25 and expedited discovery (Doc. #6) is **granted**.

26 2. BWI's motion to conduct accelerated and expedited discovery (Doc. #5) is
27 **denied**.

28 3. BWI's motion for expedited consideration of motion for order regarding

1 preservation of documents (Doc. #8) is **granted**.

2     4.    BWI's motion for order regarding preservation of documents (Doc. #7) is
3 **granted**. The Court will enter BWI's proposed order separately.

4     5.    H. James Dial's motion to stay all discovery pending resolution of this motion
5 and Rule 26(f) conference (Doc. #11) is **granted** to the extent that no discovery will occur
6 until after the Court considers BWI's renewed motion for discovery, but is **denied** to the
7 extent that Mr. Dial seeks a stay of all discovery until a Rule 26(f) conference has occurred.

8 DATED this 25th day of July, 2006.

                                        *David G. Campbell*
                                        United States District Judge