**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., a non-profit Arizona corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>James Furber, an Internet website administrator; James and Nidrah Dial, Internet website bloggers and Members of Best Western International, Inc.; Loren Unruh, an Internet website blogger and Member of Best Western International, Inc., and Gayle Unruh,<br><br>  Defendants.<br>_____<br>H. James Dial, an individual,<br><br>  Counterclaimant,<br><br>vs.<br><br>Best Western International, Inc., a non-profit Arizona corporation; Nils Kindgren; Larry McRae; Roman Jaworowicz; Bonnie McPeake; Charles Helm; Raymond Johnston; and Dave Francis,<br><br>  Counterdefendants.<br>_____ | No. CV-06-1537-PHX-DGC<br><br>**ORDER** |

Counterdefendants have filed a motion for summary judgment. Dkt. #200. A response and reply have been filed. Dkt. ##287, 323. The Court will grant the motion in part and deny it in part.[1]

## I. Background.

Plaintiff Best Western International, Inc. ("BWI") is an Arizona non-profit member corporation. BWI's members own and operate hotels under the "Best Western" brand name. BWI's board of directors consists of seven individuals who are members of BWI.

BWI filed this action against various John Doe Defendants. BWI claims that Defendants have posted anonymous messages on an Internet website that, among other things, defame BWI, breach contracts with BWI, reveal confidential information, and constitute unfair competition. Dkt. #1. BWI amended the complaint to name James Furber, James and Nidrah Dial, and Loren and Gayle Unruh as Defendants. BWI alleges that Furber and the Dials are responsible for the creation and operation of the website and that the Dials and Loren Unruh are members of BWI who have posted messages on the website. Dkt. ##53, 153-2.

James Dial filed a counterclaim against BWI and its directors, Nils Kindgren, Larry McRae, Roman Jaworowicz, Bonnie McPeake, Charles Helm, Raymond Johnston, and Dave Francis. The counterclaim asserts claims for abuse of process, intentional interference with contractual expectancy, breach of fiduciary duty, and aiding and abetting abuse of process. Dkt. #90.

## II. Summary Judgment Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary

---

[1] The request for oral argument is denied because the parties have thoroughly briefed the issues and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

- 2 -

judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.    Analysis.**

      **A.    Abuse of Process.**

Count one of the counterclaim asserts an abuse of process claim against BWI and count four asserts a claim for aiding and abetting abuse of process against the BWI directors. Dkt. #1 ¶¶ 57-59, 68-70. Counterdefendants argue that Dial has presented no evidence showing that BWI's conduct in this case constitutes abuse of process. The Court agrees.

"The essential elements of an abuse of process claim are (1) 'an ulterior purpose' and (2) 'a willful act in the use of judicial process not in the regular conduct of the proceeding.'" *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1252 (9th Cir. 1987) (quoting *Rondelli v. County of Pima*, 586 P.2d 1295, 1301 (Ariz. Ct. App. 1978)). Dial asserts that BWI has wilfully engaged in the use of judicial process in this case by filing its complaint. Dkt. #287 at 11 (citing Dkt. #1). Dial contends that BWI's purpose in filing the complaint was to squelch the free speech rights of BWI members and protect the individual interests of the BWI directors, particularly the financial interests of Jaworowicz . Dkt. #287 at 2, 12. Dial further contends that despite suspecting that he was involved in the operation of the website, BWI filed this action as a "John Doe" lawsuit so that it could conduct discovery regarding the anonymous website users without opposition. *Id.* at 5, 12; *see* Dkt. #288 ¶ 25.

BWI's motive for filing the complaint, even if improper, cannot support an abuse of process claim because "abuse of process requires some act *beyond the initiation of a lawsuit*[.]" *Joseph v. Markovitz*, 551 P.2d 571, 575 (Ariz. Ct. App. 1976) (emphasis added). Abuse of process "'is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that

1   which it was designed to accomplish.'" *Id.* at 574 (quoting Prosser, *Law of Torts* at 856-57
2   (4th ed.)).  "*Joseph* explicitly rejected the contention that the initiation of a lawsuit can
3   constitute the necessary act" for abuse of process.  *Blue Goose Growers, Inc. v. Yuma*
4   *Groves, Inc.*, 641 F.2d 695, 697 (9th Cir. 1981).  Arizona courts also have held that an abuse
5   of process claim will not lie where a lawsuit initiated in bad faith is "continued without
6   justification."  *Morn v. City of Phoenix*, 730 P.2d 873, 876 (Ariz. Ct. App. 1986).  BWI's
7   "mere persistence in [this] litigation, even if based on an improper motive, does not sustain
8   the tort."  *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 888 (Ariz. Ct. App. 2004).

9         Dial contends that BWI has done more than simply file and maintain this suit.  Dial
10  states that upon filing the complaint, BWI filed a motion to conduct expedited discovery,
11  served numerous third-party subpoenas, and sent unsigned subpoenas and preservation-of-
12  documents letters to Dial, Furber, and Unruh.  Dkt. #287 at 5; *see* Dkt. #288 ¶¶ 23-24.  Dial
13  further states that BWI's discovery requests relating to his computers has caused him to incur
14  substantial legal expenses.  Dkt. #287 at 8-9.  Dial claims that the primary purpose behind
15  BWI's discovery requests was to intimidate and retaliate against Dial and other BWI
16  members.  *Id.*

17        An "ulterior purpose alone cannot constitute abuse of process."  *Bird v. Rothman*, 627
18  P.2d 1097, 1100 (Ariz. Ct. App. 1981).  To prevail on his claim, Dial must establish that
19  BWI used the judicial process "in a fashion inconsistent with legitimate litigation goals."
20  *Crackel*, 92 P.3d at 889.  There is no liability if BWI did "nothing more than carry out
21  the process to its authorized conclusion, even though with bad intentions." *Morn*, 730 P.2d
22  at 877.

23        Dial has presented no evidence that BWI's discovery requests were "used in a way
24  'not proper in the regular conduct of the proceeding.'" *Blue Goose*, 641 F.2d at 697 (quoting
25  *Rondelli*, 586 P.2d at 1301).  Nor has Dial presented evidence that the discovery process was
26  "exploited to obtain a collateral advantage or used in any form of extortion." *Id.*  The Court
27  concludes that BWI's discovery requests do not amount to abuse of process.

28

1    Dial contends that BWI has not sued other individuals who allegedly posted
2 defamatory statements on the website and that this "selective prosecution" supports his abuse
3 of process claim. Dkt. #287 at 7-8. But Dial has cited no legal authority, and the Court has
4 found none, for the proposition that the failure to sue other potential defendants constitutes
5 abuse of process.

6    Dial has not demonstrated a triable issue on his abuse of process claim. *See Joseph*,
7 551 P.2d at 575 (affirming summary judgment where the claim was based on the initiation
8 of a lawsuit); *Morn*, 730 P.2d at 876 (the continuation of a baseless lawsuit did not constitute
9 abuse of process); *Blue Goose*, 641 F.2d at 697 (the formal use of the discovery process did
10 support an abuse of process claim). The Court therefore will grant summary judgment on
11 the claim. *See Rondelli*, 586 P.2d at 1301 (affirming summary judgment where the conduct
12 at issue was not a "perversion of the judicial process"); *Bird*, 627 P.2d at 1100 (affirming
13 summary judgment where, "[e]ven assuming a factual issue exist[ed] as to an ulterior
14 purpose, there was no evidence of subsequent misuse of process after it was lawfully
15 issued"). Given this ruling, Dial's claim against the BWI directors for aiding and abetting
16 abuse of process fails as a matter of law. *See Dawson v. Withycombe*, 163 P.3d 1034, 1052
17 (Ariz. Ct. App. 2007) (aiding and abetting requires an underlying tort).

18    **B.    Intentional Interference with Contractual Expectancy.**

19    Count two asserts a claim for intentional interference with contractual expectancy
20 against BWI and at least one BWI director based on the removal of Dial's hotel from the
21 BWI reservation system in December 2006. Dkt. #1 ¶¶ 60-63. Dial states in his
22 counterclaim that once the identity of the unnamed director was obtained through discovery,
23 he would amend the counterclaim to name the director as a defendant. *Id.* at 9 n.1. Dial has
24 not amended the counterclaim and the time for doing so has expired. The intentional
25 interference with contractual expectancy claim is therefore asserted only against BWI.

26    To establish the claim, Dial must show a valid contractual expectancy, knowledge of
27 the expectancy on the part of BWI, intentional and improper interference by BWI causing
28 a termination of the expectancy, and resulting damage to Dial. *See Antwerp Diamond Exch.*

1  *of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.*, 637 P.2d 733, 740 (Ariz. 1981); *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985), *superseded in other respects by* A.R.S. § 23-1501.  BWI does not dispute that it was aware that Dial had valid contractual expectancies with potential guests who choose to stay at his hotel.  Nor does BWI dispute that Dial's hotel was removed from the BWI reservation system.  Rather, BWI contends that the removal was an inadvertent error on the part of one of its employees. Dkt. ##200 at 13-14, 323 at 4-5.

Dial has presented evidence that the removal was intentional.  Dial's controller, James Furber, has testified that the manager of the BWI reservation system told Furber that Dial's hotel had been "deliberately" removed from the reservation system.  Dkt. #291-2 at 3.  Dial also has presented evidence that no hotel previously had been removed from the system through "inadvertence" and that the removal of his hotel occurred the day after he served Jaworowicz with an allegedly harassing subpoena.  Dkt. #288 ¶¶ 47, 54; *see* Dkt. #73.  A jury reasonably could conclude from this evidence that BWI intentionally and improperly removed Dial's hotel from its reservation system.  The Court accordingly will deny summary judgment on Dial's intentional interference with contractual expectancy claim against BWI. *See Antwerp*, 637 P.2d at 740 (whether the defendant's tortious conduct was intentional and for the purpose of interfering with the plaintiff's contractual relationships "was a fact for the finder of fact to determine"); *see also Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.").[2]

**C.  Breach of Fiduciary Duty.**

Count three of the counterclaim asserts a breach of fiduciary duty claim against the BWI directors.  Dkt. #1 ¶¶ 64-67.  The claim is based on the directors' decisions to proceed with this lawsuit.  Dkt. #287 at 13.  The directors contend that the business judgment rule protects them from liability.  Dkt. #200 at 11-13.

---

[2] The Court will not consider BWI's arguments regarding standing and damages because they were made for the first time in BWI's reply.  *Compare* Dkt. #200 at 13-14 *with* Dkt. #332 at 11.

- 6 -

1 "The business judgment rule 'precludes judicial inquiry into actions taken by a
2 director in good faith and in the exercise of honest judgment in the legitimate and lawful
3 furtherance of a corporate purpose.'" *Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821,
4 828 (Ariz. Ct. App. 2001) (quoting *Shoen v. Shoen*, 804 P.2d 787, 794 (Ariz. Ct. App.
5 1990)); *see Fagerberg v. Phoenix Flour Mills Co.*, 71 P.2d 1022, 1024-25 (Ariz. 1937);
6 *Kadish v. Phx.-Scotts. Sports Co.*, 466 P.2d 794, 797 (Ariz. Ct. App. 1970); *see also* A.R.S.
7 § 10-830(D).  The business judgment rule generally applies to the conduct of a director
8 because there "is a *presumption* that in making a business decision the directors of a
9 corporation acted on an informed basis, in good faith and in the honest belief that the action
10 was in the best interests of the company." *Blumenthal v. Teets*, 745 P.2d 181, 186 (Ariz. Ct.
11 App. 1987) (emphasis in original); *see* A.R.S. § 10-830(D).  Where the rule does apply to the
12 conduct of a director, "a showing of gross negligence is necessary to strip the director of the
13 rule's protection." *FDIC v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998); *see Resolution Trust*
14 *Corp. v. Blasdell*, 930 F. Supp. 417, 424 (D. Ariz. 1994).  But where "there is a prima facie
15 showing that a director is personally interested in a corporate transaction, the business
16 judgment rule does not apply, and the burden shifts to the director to show that the decision
17 with respect to a particular transaction is fair and serves the best interests of the
18 corporation[.]" *Shoen*, 804 P.2d at 794; *see Kadish*, 466 P.2d at 797 ("[W]here the acts of
19 an officer or director smack of self-dealing . . . the officer or director has the burden of
20 proving the fairness of the transaction[.]"); *Blumenthal v. Teets*, 745 P.2d 181, 186 (Ariz. Ct.
21 App. 1987) ("[The rule's] protections can only be claimed by disinterested directors whose
22 conduct otherwise meets the tests of business judgment."); *see also Mann v. GTCR Golder*
23 *Rauner, L.L.C.*, 483 F. Supp. 2d 884, 903 (D. Ariz. 2007) (applying Delaware law).

### 1.     Director McPeake.

25       It is undisputed that McPeake has consistently voted against proceeding with this
26 lawsuit.  *See* Dkt. ##290-3 at 9, 296 at 11.  Dial has presented no evidence showing that
27 McPeake breached her fiduciary duties in this case. The Court will grant summary judgment
28 in favor of McPeake with respect to count three.

### 2. Directors Kindgren and Francis.

Kindgren and Francis have testified that they voted in favor of the investigation leading to this action in good faith and with the belief that discovering the identities of the individuals involved with the website was in the best interest of BWI. Dkt. ##201-6 at 3, 201-7 at 3, 288-8 at 50. They also have testified that they voted in favor of pursuing this action based on the advice of legal counsel. Dkt. #288-7 at 21-22, 34; Dkt. #288-8 at 11-13. Once Kindgren and Francis learned that BWI members, rather than competitors or disgruntled employees, were involved with the website, they voted against the continuation of this action. Dkt. ##288-7 at 25, 288-8 at 18, 21.

Dial does not contend that Kindgren and Francis have a personal interest in the claims asserted by BWI. Nor does Dial contend that their initial decision authorizing this action was made in bad faith. Rather, Dial asserts that they were "kept in the dark" by the BWI bureaucracy and were provided false information about the nature of the lawsuit. Dkt. #287 at 6. Dial claims that the business judgment rule does not protect Kindgren and Francis from liability because their decision to pursue this action was not informed. *Id.* at 14-15.

But Dial has presented no evidence showing that Kindgren's and Francis' reliance on the advice of counsel was unreasonable. The business judgment rule therefore applies to Kindgren and Francis. *See Blumenthal*, 745 P.2d at 186; A.R.S. § 10-830(B)(1) (stating that in discharging their fiduciary duties directors are entitled to rely on information and opinions presented by legal counsel).

To overcome the protection afforded by the business judgment rule, Dial must show gross negligence on the part of Kindgren and Francis. *See Blumenthal*, 745 P.2d at 188 ("Since director liability must be determined in this case under the business judgment rule, it must be predicated upon concepts of gross negligence."); *Jackson*, 133 F.3d at 699 ("[A] gross negligence standard is appropriate to impose liability for acts within the scope of the business judgment rule[.]"); *Resolution Trust*, 930 F. Supp. at 424 (the claimant "must prove gross negligence to overcome the presumption imposed by the business judgment rule"). Gross negligence is "flagrant" conduct that "evinces a lawless and destructive spirit."

*Cullison v. City of Peoria*, 584 P.2d 1156, 1160 (Ariz. 1978) (citing *Scott v. Scott*, 252 P.2d 571, 575 (Ariz. 1953)). The evidence in this case is simply not "capable of supporting a finding that [Kindgren and Francis] acted grossly negligent." *Resolution Trust*, 930 F. Supp. at 427. This is particularly true given Dial's allegation that these directors supported the lawsuit because they were kept in the dark. The business judgment rule therefore protects them from liability. *See Fagerberg*, 71 P.2d at 1024-25 ("[D]irectors of a corporation are authorized to handle the ordinary business affairs of the corporation according to their best judgments, and, if, acting in good faith within the scope of the corporation's ordinary business, they commit errors of judgment, they are not liable therefor[.]"); *Kadish*, 466 P.2d at 797 ("[D]irectors of a corporation are not personally liable for mere errors of judgment while acting in good faith within the scope of the corporation's business."). The Court will grant summary judgment in favor Kindgren and Francis with respect to count three.

### 3. Directors McRae, Helm, and Johnston.

McRae, Helm, and Johnston have testified that they believe in good faith that pursuing the claims asserted in the complaint is in the best interest of BWI. Dkt. ##201-2 at 3, 201-3 at 3, 201-5 at 3. Dial has presented no evidence that McRae, Helm, or Johnston have a personal interest in BWI's claims or that their votes in favor of pursuing this action were made in bad faith. Rather, Dial contends that they abdicated their fiduciary duties by authorizing this lawsuit without having conducted their own independent investigation. Dkt. ##287 at 13-15, 288 ¶¶ 18-21.

The undisputed evidence shows that BWI's legal department conducted an investigation into the operation of the website, that the findings of the investigation were presented to the BWI directors in an executive session of the board, and that McRae, Helm, and Johnston relied on the advice of corporate legal counsel in deciding to vote in favor of maintaining this action. *See* Dkt. ##288 at 5, 296 at 10-11, 290-4 at 4, 290-5 at 5, 325-2 at 17, 325-5 at 33, 329-2 at 2-5. Because the evidence is not sufficient to support a finding of gross negligence by McRae, Helm, or Johnston, *see Cullison*, 584 P.2d at 1160, the business judgment rule protects them from liability. *See Kadish*, 466 P.2d at 797; *Fagerberg*, 71 P.2d

1024-25. The Court will grant summary judgment in their favor with respect to count three.[3]

### 4. Director Jaworowicz.

The evidence, construed in Dial's favor, shows that Jaworowicz has a personal interest in BWI's claims. On June 3, 2006 – less than two weeks before BWI's complaint was filed – Jaworowicz sent an e-mail to Dial threatening to sue him for both compensatory and punitive damages if Dial did not cease making alleged defamatory statements about Jaworowicz. Dkt. #289-11 at 2. Kindgren and Francis have testified that Jaworowicz stated that he would personally benefit from learning the identities of the website users because he believes he has valid defamation claims worth six to seven hundred thousand dollars. Dkt. ##288-7 at 17-19, 288-8 at 18-19, 28.

Counterdefendants contend that Dial cannot overcome the business judgment rule's presumption of good faith because Dial cannot show that BWI's claims lack a rational business purpose given the Court's ruling that BWI has made a prima facie showing with respect to its contract claims. Dkt. #200 at 12, 15 (citing Dkt. #49). But because Dial has presented evidence that Jaworowicz is personally interested in BWI's claims, the business judgment rule does not apply and the burden shifts to Jaworowicz to show that his votes in favor of pursuing the claims were fair and serve the best interests of BWI. *See Shoen*, 804 P.2d at 794; *Kadish*, 466 P.2d at 797 (where a director is personally interested in a transaction he "has the burden of proving the fairness of the transaction to the corporation"); *see also Mann*, 483 F. Supp. 2d at 903 (where "the presumption of the business judgment rule is rebutted, the burden shifts to the director defendants to prove to the *trier of fact* that the challenged transaction was 'entirely fair' to the shareholder plaintiff") (alterations and citation omitted) (emphasis in original). Jaworowicz has made no such showing. The Court accordingly will deny summary judgment with respect to the breach of fiduciary duty claim against him.

---

[3] Dial asserts that the alleged breach of fiduciary duty in this case is "compounded" by the directors' decision not to sue some of the users of the website. Dkt. #287 at 13. But Dial cites no legal authority in support of this assertion.

**IT IS ORDERED** that Counterdefendants' motion for summary judgment (Dkt. #200) is **granted in part** and **denied in part** as set forth in this order.

DATED this 12th day of May, 2008.

*David G. Campbell*
United States District Judge