1   **WO**

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9

10   Best Western International, Inc., a non-          )   No. CV-06-1537-PHX-DGC
     profit Arizona corporation,                      )
11                                                     )   **ORDER**
                  Plaintiff,                           )
12                                                     )
     vs.                                               )
13                                                     )
                                                       )
14   James Furber, an Internet website                 )
     administrator; James and Nidrah Dial,             )
15   Internet website bloggers and Members             )
     of Best Western International, Inc.;              )
16   Loren Unruh, an Internet website blogger)
     and Member of Best Western                        )
17   International, Inc., and Gayle Unruh,              )
                                                       )
18                Defendants.                          )
                                                       )
19   _____)
                                                       )
20   H. James Dial, an individual,                     )
                                                       )
21                Counterclaimant,                     )
                                                       )
22   vs.                                               )
                                                       )
23   Best Western International, Inc., a                )
     non-profit Arizona corporation; and               )
24   Roman Jaworowicz,                                 )
                                                       )
25                Counterdefendants.                   )
                                                       )
26   _____)

27

28

1   Plaintiff Best Western International, Inc. ("BWI") is an Arizona non-profit member
2   corporation.  BWI's members own and operate hotels under the "Best Western" brand name.
3   BWI filed this action against various John Doe Defendants.  BWI claims that these
4   defendants posted anonymous messages on an Internet website known as "Freewrites.net,"
5   and that the messages breach contracts with BWI, defame BWI, and constitute other wrongs.
6   BWI subsequently amended its complaint to name James Furber, James and Nidrah Dial, and
7   Loren and Gayle Unruh as Defendants.

8   BWI alleges that Furber and the Dials are responsible for the creation and operation
9   of the website and that the Dials and Loren Unruh are members of BWI who have posted
10  actionable messages on the website.  The current complaint asserts claims for breach of
11  contract (counts one and two), breach of the implied covenant of good faith and fair dealing
12  (counts three and four), breach of an implied contract (counts five and six), breach of
13  fiduciary duty (count seven), defamation (count eight), tortious interference with prospective
14  economic advantage (count ten), and tortious interference with contract (count eleven).
15  Dkt. #153-2.

16  The Furber, Dial, and Unruh Defendants ("Defendants") have filed an extensive
17  motion for summary judgment.  Dkt. ##338.  Equally substantial responses and replies have
18  been filed.  Dkt. ##403, 407.  For reasons set forth below, the Court will grant the motion in
19  part and deny it in part.[1]

20  **I.      Summary Judgment Standard.**

21  Summary judgment is appropriate if the evidence, viewed in the light most favorable
22  to the nonmoving party, shows "that there is no genuine issue as to any material fact and that
23  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes
24  over facts that might affect the outcome of the suit will preclude the entry of summary
25  judgment, and the disputed evidence must be "such that a reasonable jury could return a

26

27      [1]Defendants' request for oral argument is denied because the parties have thoroughly
    briefed the issues and oral argument will not aid the Court's decision.  *See Mahon v. Credit*
28  *Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.   The Contract Claims.

BWI asserts contract-related claims in counts one, three, and five of the complaint. Dkt. #153-2 ¶¶ 90-21, 133-47, 160-73. Defendants seek summary judgment on each claim.[2]

### A.   Nidrah Dial.

As an initial matter, Defendants argue that Nidrah Dial is entitled to summary judgment on the contract-related claims because she has never had a contractual relationship with BWI. Dkt. #338 at 10 n.4 (citing Dkt. #339 ¶ 36). BWI contends that Mrs. Dial is a principal owner of the Best Western Green Tree Inn and therefore is obligated under the BWI membership agreement relating to that hotel. Dkt. #407 at 30 n.17 (citing Dkt. #408 ¶ 36).

"Interpretation of a contract is a question of law for the court when its terms are unambiguous on its face." *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. App. 1975); *see Chandler Med. Bldg. Partners v. Chandler Dental Group*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993). The membership agreement at issue lists the owner of the Green Tree Inn as Green Tree Investors, LLC. Dkt. #339-26 ¶ 3. The agreement requires the signature of "all persons or entities having an ownership interest in" the hotel. *Id.* ¶ 44. James Dial signed the agreement on behalf of himself and Green Tree Investors, LLC. *Id.* While Nidrah Dial is listed as a part-owner of the Green Tree Inn on a separate applicant information form, *see* Dkt. #339-26 at 12, she did not sign the membership agreement itself and is not identified in the agreement as an owner of the Green Tree Inn.

The terms of the membership agreement unambiguously reflect that only James Dial and Green Tree Investors, LLC are owners of the Green Tree Inn. Mrs. Dial therefore is not

---

[2]Counts two, four, six, and seven are asserted against unnamed governors of BWI. Plaintiff does not dispute that Defendants are not BWI governors.

1  obligated under the agreement.  The Court will grant summary judgment in her favor with

2  respect to the contract-related claims.

3      **B.  Breach of Contract (Count One).**

4      BWI alleges in count one that Loren Unruh and James Dial breached their contractual

5  obligations to BWI by using BWI-owned computer equipment to make tortious posts on the

6  Freewrites.net website, by improperly using BWI marks, and by disclosing BWI confidential

7  information.  Dkt. #153-2 ¶¶ 90-121.

8          **1.    Use of BWI Equipment.**

9      Defendants have testified that all posts made by Unruh and Dial were made using their

10  own personal computers, not BWI equipment.  Dkt. ##339-25, 339-28, 339-29.  BWI has

11  presented evidence showing that certain posts were made using Internet addresses owned by

12  Unruh and Dial (Dkt. #408-4 ¶¶15, 17), but that evidence says nothing about the equipment

13  used to make the posts.  To avoid summary judgment, BWI "must do more than simply show

14  that there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co. v.*

15  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 requires BWI to "come forward with

16  '"specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587 (quoting Fed. R.

17  Civ. P. 56(e)) (emphasis in original); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

18  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  BWI has not met this burden.  The Court will grant

19  summary judgment in Defendants' favor on this issue.

20          **2.    Use of BWI Marks.**

21      The BWI license agreement grants members a license to use, at and in connection with

22  their hotels, the BWI marks as set forth in the BWI Brand Identity Manual ("Manual").

23  Dkt. #1-3 ¶ 20.  BWI has presented evidence that Defendants used the Best Western name

24  on the Freewrites.net website.  Dkt. #34 Ex. D.  This evidence is sufficient to create a

25  genuine issue as to whether such use was in connection with hotels.  *See* Dkt. #49 at 9.

26      Section 5.1 of the Manual sets forth the BWI website branding standards.  Dkt. #374

27  at 20-51.  BWI asserts that reasonable jurors may infer that Defendants used BWI marks on

28  the Freewrites.net website "in a manner far exceeding the bounds of permissibility in the

[Manual].”  Dkt. ##407 at 31-32, 408-4 ¶¶ 24-27.  Defendants rely on a single phrase from section 5.1 to argue that the website branding standards apply only to websites designed “to immediately communicate with customers.”  Dkt. #403 at 8; *see* Dkt. #374 at 22.

The Court cannot, on the record before it, conclude as a matter of law that Defendants’ use of the Best Western name on the Freewrites.net website does not breach provisions of section 5.1 of the Manual.[3]

### 3.    Disclosure of Confidential Information.

Defendants state that no contract exists requiring Unruh or Dial to keep BWI information confidential.  Dkt. ##338 at 13, 403 at 8.  BWI does not dispute the lack of a written confidentiality agreement.  BWI instead contends that a requirement that members maintain executive session information as confidential “arises out of” the BWI membership agreement.  Dkt. #408-4 ¶ 28.  In support of this contention, BWI cites generally to the BWI bylaws.  *Id.*

Article IV, section 13 of the bylaws provides that executive sessions of the board of directors are to be confidential.  Dkt. #339-6 at 14; *see* Dkt. #199 at 4-5.  Article IV, however, applies to the conduct of the BWI board, not BWI members.  Dkt. #339-6 at 11.

BWI has identified no written contract requiring Defendants to keep information confidential.  The Court will grant summary judgment in Defendants’ favor with respect to this issue.

### 4.    Breach of Contract Summary.

The Court will grant summary judgment on count one with respect to the claims that Unruh and Dial have breached contracts with BWI by using BWI equipment and disclosing BWI confidential information.  The Court will deny summary judgment with respect to the claim that Unruh and Dial have breached contracts with BWI by using the Best Western name on the Freewrites.net website.

---

[3]BWI asserts that section 1.4 of the Manual permits the use of BWI marks only with “express written permission” from BWI (Dkt. ##407 at 31, 408-4 ¶ 22), but BWI has not made section 1.4 part of the record.  *See* Dkt. ##374, 375 at 1-20.

1

## C.     Breach of Implied Covenant (Count Three).

2       BWI's rules and regulations require members "to use their best efforts to maintain

3 positive relationships with customers and solicit return business[.]"  Dkt. #408-4 ¶ 4.  BWI

4 contends that Defendants have breached their implied covenant of good faith and fair dealing

5 by posting allegedly tortious statements on the Freewrites.net website. Dkt. #407 at 32.  BWI

6 cites two sections of the rules and regulations in support of this contention:  §§ 500.15 and

7 500.27.  Dkt. #408-4 ¶ 4.  Section 500.15 requires members to "permit inspection" of their

8 hotels.  Dkt. #1-4 at 12.  Section 500.27 requires members to provide "[e]fficient, courteous

9 and high quality services[.]"  *Id.* at 13.  BWI does not explain how the operation of the

10 website has "impair[ed] the right of [BWI] to receive the benefits which flow from [§§

11 500.15 and 500.27]."  *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).  BWI does not

12 contend that Defendants have frustrated efforts to inspect their hotels.  Nor has BWI

13 presented evidence showing that Defendants have provided poor service to their customers.

14 The Court will grant summary judgment in favor of Defendants with respect to count three.

15

## D.     Breach of Implied Contract (Count Five).

16       BWI asserts that facts exist from which an implied confidentiality contract may be

17 found.  Dkt. #407 at 33.  The parties agree that the membership agreement governs the

18 relationship between BWI and its members. Dkt. ##339, 408 ¶¶ 38.  Unruh's and Dial's

19 membership agreements contain integration clauses providing that the written agreement

20 "embodies the whole agreement of the parties" and there "are no promises, terms, conditions

21 or obligations other than those contained herein." Dkt. #339-26, 339-27 ¶¶ 43.  "Because the

22 [membership] agreement contains an integration clause, the [agreement] represents the

23 parties' entire agreement, and there can be no implied terms."  *RUI One Corp. v. City of

24 Berkeley*, 371 F.3d 1137, 1148 (9th Cir. 2004).  Moreover, BWI has presented no argument

25 in support of its assertion that reasonable jurors may infer an implied contract and breach.

26 *See* Dkt. #407 at 34 (citing Dkt. #408-4 ¶¶ 33-157).  The Court will grant summary judgment

27

28

1    in Defendants' favor with respect to count five.[4]

2    **III.    The Defamation Claim (Count Eight).**

3          BWI asserts a claim for defamation in count eight.  Dkt. #153-2 ¶¶ 200-12.  BWI

4    contends that Defendants have published or permitted the publication of more than 400

5    defamatory posts on the Freewrites.net website.  Dkt. #407 at 5; *see* Dkt. #371 at 77-95.

6          The tort of defamation requires a false and defamatory statement concerning the

7    plaintiff, an unprivileged publication of the statement to a third party, fault on the part of the

8    publisher, and either presumed or actual damages.  *See*  Restatement (Second) of Torts § 558

9    (1977); *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 180 & n.1 (Ariz. Ct. App. 1985)

10   (citing Restatement § 558); *Burns v. Davis*, 993 P.2d 1119, 1126 (Ariz. Ct. App. 1999)

11   ("Arizona views the Restatement as authority for resolving questions concerning rules in

12   defamation cases.").  When establishing the element of fault, a public figure must show that

13   the alleged defamatory statement "'was made with 'actual malice' – that is, with knowledge

14   that it was false or with reckless disregard of whether it was false or not.'"  *Yetman v.*

15   *English*, 811 P.2d 323, 326 (Ariz. 1991) (en banc) (quoting *N.Y. Times Co. v. Sullivan*, 376

16   U.S. 254, 279-80 (1964)); *see Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 155 (1967);

17   Restatement § 580A.  A private person, on the other hand, may establish fault by showing

18   either actual malice or negligence on the part of the publisher.  *See Peagler v. Phoenix*

19   *Newspaper, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977) (en banc) (citing Restatement § 580B);

20   *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007) (citing *Peagler*).

21         Defendants seek summary judgment with respect to 50 statements that they either

22   made or published.  Dkt. #338 at 18; *see* Dkt. #341.  Defendants argue that the statements

23

24   _____

25         [4]Contrary to BWI's assertion (Dkt. #407 at 33 n.22), the Court has not previously
     found that BWI has established a prima facie case for each element of its claims.  In granting
26   Plaintiff's request to conduct expedited discovery, the Court concluded that there were triable
     issues as to whether Defendants' use of the Best Western name on the Freewrites.net website
27   breached contracts with Plaintiff (*see supra* § II.B.2), and whether the unnamed Governor
     Defendants improperly revealed Plaintiff's confidential information.  Dkt. #49 at 9.  The
28   Court did not address Plaintiff's claim for breach of implied contract.

are not actionable because they constitute mere opinions, are either true or substantially accurate, and do not concern BWI. Dkt. #338 at 18-30; *see* Dkt. #341-2 at 1-3. Defendants further argue that the actual malice standard applies because the statements are protected by the "common interest" privilege and because BWI is a limited public figure. Dkt. #338 at 30-36. Defendants contend that BWI has presented no evidence of actual malice. *Id.* at 31; *see* Dkt. #341-2 at 1-3. Finally, Defendants contend that under the Communications Decency Act ("CDA"), James Furber, Nidrah Dial, and Loren Unruh are immune from suit with respect to statements they did not create. Dkt. #338 at 15-17.[5]

### A.    Are Defendants Protected by the Common Interest Privilege?

Defendants contend that they are protected by the "common interest" privilege. Dkt. #338 at 31. That privilege "applies where an occasion arises in which 'one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them.'" *Green Acres Trust v. London*, 688 P.2d 617, 626 (Ariz. 1984) (en banc) (quoting Restatement § 596, cmt. c). "Whether a privileged occasion arose is a question of law for the Court." *DeBinder v. Albertson's, Inc.*, No. CV 06-1804-PCT-PGR, 2008 WL 828775 (D. Ariz Mar. 26, 2008) (citing *Green Acres Trust*, 688 P.2d at 624).

The Court concludes that the common interest privilege applies with respect to at least some of the statements made by James Dial and Loren Unruh. *See* Dkt. #341. BWI does not dispute that it is a member non-profit corporation and that Dial and Unruh are members of BWI. *See* Dkt. #153-2 ¶¶ 10, 22, 26. Nor is it disputed that other BWI members visited the Freewrites.net website. Dkt. #408-4 ¶ 83. The common interest of members in a non-profit corporation such as BWI "is recognized as sufficient to support a privilege for communications among [the members] concerning the qualifications of the officers and members and their participation in the activities of the [corporation]." Restatement § 596, cmt. d. The common interest privilege applies in this case because each member of BWI

---

[5]The parties dispute whether the Dials made or posted thirteen additional statements. *See* Dkt. ##407 at 7 n.3, 403 at 21-22. The Court need not address these statements because Defendants have not sought summary judgment with respect them. *See* Dkt. #338.

- 8 -

1   may look to other members to supply relevant information relating to matters affecting the

2   goals of the corporation.  *See Green Acres Trust*, 688 P.2d at 626; *Connor v. Timothy*, 33

3   P.2d 293, 294 (Ariz. 1934) (privilege applies to statements made by co-members of a board

4   of trustees of a school district regarding teacher qualifications); *Aspell v. Am. Contract

5   Bridge League*, 595 P.2d 191, 192 (Ariz. Ct. App. 1979) (privilege applies to statements

6   made by bridge club members regarding disciplinary issues).

7          The conclusion that the privilege applies to some of the allegedly defamatory

8   statements does not, however, end the inquiry.  The Court must determine "not only whether

9   a qualified privilege existed but whether that privilege was abused."  *Burns*, 993 P.2d at 1128

10  (citing *Green Acres Trust*, 688 P.2d at 624).  The privilege may be abused and its protection

11  lost through excessive publication of the defamatory material.  *See* Restatement § 596, cmt. a

12  (citing Restatement § 604).

13         "Abuse through excessive publication results from publication to an unprivileged

14  recipient not reasonably necessary to protect the interest upon which the privilege is

15  grounded."  *Green Acres Trust*, 688 P.2d at 624 (citing Restatement § 604, cmt. a).  In this

16  case, it is undisputed that the Freewrites.net website was not password-protected until

17  January 2007 – more than six months after its creation.  Dkt. #338 at 2, 32.  It also is

18  undisputed that the website has been accessed thousands of times from hundreds of different

19  Internet addresses.  Dkt. ##402, 408-4 ¶¶ 81-82.  BWI has presented evidence that the

20  website has been viewed by non-members and competitors of BWI.  Dkt. #408-4 ¶ 83.  A

21  jury reasonably could conclude from this evidence that Defendants abused the common

22  interest privilege by publication to unprivileged recipients.  *See* Restatement § 604, cmts. a-b

23  (discussing circumstances from which excessive publication may be found).  Summary

24  judgment on the basis of the privilege is therefore not appropriate.  *See Burns*, 993 P.2d at

25  1128 ("'[U]nless only one conclusion can be drawn from the evidence, the determination of

26  the question whether the privilege has been abused is for the jury.'") (citation omitted).

27         **B.     Is BWI a Limited Public Figure?**

28         Defendants cite *Waldbaum v. Fairchilds Productions, Inc.*, 627 F.2d 1287 (D.C. Cir.

1   1980), for the proposition that a plaintiff is a limited public figure for defamation purposes

2   if a public controversy exists, the plaintiff played a role in the controversy, and the alleged

3   defamatory statements were germane to the plaintiff's position in the controversy. Dkt. #338

4   at 33 (citing *Waldbaum*, 627 F.2d at 1296-98). BWI is a limited public figure, Defendants

5   contend, because "BWI was embroiled in a highly political controversy regarding the proper

6   management and future of the organization." *Id.* Defendants assert that BWI sought to pass

7   a number of bylaws that would have shifted control from the BWI membership to the board

8   of directors, employed questionable management practices, introduced new design standards

9   and organizational policies, and withheld financial information. *Id.* at 33-34. Defendants

10   claim that these actions were controversial among the membership because they directly

11   affected the profitability and management of all member properties. *Id.* at 34.

12       BWI correctly notes that Defendants cite no evidence to support the assertion that the

13   disputes over the future of BWI and its internal corporate governance rise to the level of an

14   important public controversy. Dkt. #407 at 23. Moreover, even if the Court were to assume

15   that a public controversy existed, Defendants have presented no evidence that BWI "'thrust

16   [itself] to the forefront'" of the controversy "'in order to influence the resolution of the issues

17   involved.'" *Waldbaum*, 627 F.2d at 1296 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323,

18   345 (1974)); *see Antwerp Diamond Exchange of Am., Inc. v. Better Bus. Bur. of Maricopa

19   County, Inc.*, 637 P.2d 733, 737 (Ariz. 1981). The Court cannot, on the record before it,

20   conclude that BWI is a limited public figure.[6]

21       **C.    Has BWI Demonstrated a Triable Issue on the Element of Fault?**

22       Given the First Amendment's protection of free speech, fault is an essential element

23   of a claim for defamation. *See Gertz*, 418 U.S. at 347; *Boswell v. Phoenix Newspapers, Inc.*,

24   730 P.2d 178, 180 & n.1; Restatement § 580B, cmt. c. Fault may consist of actual malice or

25   negligence on the part of the defendant. *See Boswell*, 730 P.2d at 180 n.1 (citing *Peagler*,

26   560 P.2d at 1222); Restatement §§ 580A, 580B. The plaintiff bears the burden of proving

27

28       [6]The Court will not consider the new evidence presented by Defendants for the first
time in their reply brief. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

fault. Restatement § 580B, cmt. j; *see* Restatement § 580A, cmt. e.

BWI appears to misunderstand the parties' respective burdens when it comes to a defense motion for summary judgment. BWI argues that "Defendants have not established, as a matter of undisputed fact and law, that Defendants did not act negligently or with actual malice." Dkt. #407 at 24 (emphasis and capitalization omitted). But it is not Defendants' obligation to disprove fault. BWI bears the burden of proof on this issue. Defendants can assert in a motion for summary judgment that BWI cannot satisfy this burden of proof – as Defendants have in their motion (*see* Dkt. #338 at 31) – at which point BWI must come forward with evidence of fault sufficient to create an issue for trial. The evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If BWI fails to produce such evidence, summary judgment may be entered against it. As the Supreme Court explained more that 20 years ago, summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The question in this motion, therefore, is not whether Defendants have proved that they did not act with actual malice or negligence, but whether BWI has presented sufficient evidence that they did.

Because it is unclear from the present record whether BWI is a limited public figure, the Court cannot determine at this stage whether BWI will be required to prove actual malice or mere negligence to establish the fault required for defamation. The Court accordingly will consider the evidence BWI has presented to support both standards. BWI contends that summary judgment should be denied regardless of the standard applied. Dkt. #407 at 24.

**1.     Actual Malice.**

Unfortunately, BWI does not address the alleged defamatory communications on a statement-by-statement basis. Instead, BWI cites generally to 76 paragraphs of its counter statement of facts for the proposition that "evidence exists from which it may be inferred that Defendants acted with malice." *Id.* (citing Dkt. #408 ¶¶ 80-155). Many of the 76 paragraphs cited by BWI simply do not address the issue of actual malice. *See, e.g.,* Dkt. #408 ¶¶ 80,

1   87-88, 91, 97, 101, 104, 112, 117-19, 126-27, 130-52.   The remaining cited paragraphs

2   merely state, in conclusory fashion, that BWI disputes that the alleged defamatory statements

3   were not made with actual malice, a conclusion followed by a survey-like recitation of

4   evidence from various depositions and documents including many citations to entire

5   documents without explanation.

6       Courts are not obligated to "'scour the record in search of a genuine issue of triable

7   fact.'"   *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted); *see Carmen*

8   *v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001); *Forsberg v. Pac.*

9   *N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).   Rather, courts rely on "'the

10  nonmoving party to identify *with reasonable particularity* the evidence that precludes

11  summary judgment.'"   *Keenan*, 91 F.3d at 1279 (emphasis added).

12      The Court has nonetheless reviewed the record in search of evidence of actual malice.[7]

13  The Court concludes that BWI has failed to present evidence sufficient to survive summary

14  judgment – if actual malice is required – with respect to the 50 statements made by the Dials

15  and Unruh.

16      BWI has presented evidence showing that Defendants believed Roman Jaworowicz

17  to be a selfish, controlling, vindictive, and intimidating board member; that Defendants

18  referred to Jaworowicz as a "bully" and an "illegal director"; and that Defendants did not like

19  Jaworowicz and wanted him removed from the BWI board.   *See, e.g.*, Dkt. #408 ¶ 81.   This

20  evidence clearly is sufficient to support a finding that Defendants bear ill will toward

21

22      [7]BWI provided the Court with courtesy copies of its several-hundred-page filings,
23  including copies of its 114 exhibits.  Unfortunately, these copies were not tabbed or indexed
    to correspond to citations in BWI's briefs.  Nor were the exhibits filed in the Court's
24  CM/ECF system labeled to correspond with citations in the briefs.  Moreover, some of
    BWI's exhibits were sealed, others were out of order, some were missing, some were
25  duplicates, all were two-sided, and the courtesy copies used an entirely different numbering
26  system than BWI's briefs.  The Court's law clerk spent many hours searching for information
    cited in the briefs.  The clerk succeeded, and the Court ultimately was able to understand the
27  evidence BWI submitted in support of its arguments, but the task would have been
    considerably easier had BWI submitted a single set of exhibits tabbed to correspond to
28  citations in its briefs.

1   Jaworowicz.  The United States Supreme Court has made clear, however, that "the actual

2   malice standard is not satisfied merely through a showing of ill will or 'malice' in the

3   ordinary sense of the term."  *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S.

4   657, 666 (1989) (citations omitted); *see Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81,

5   82 (1967) ("personal spite, ill will or a desire to injure plaintiff" not equivalent to actual

6   malice); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 10 (1970) (finding of liability

7   "merely on the basis of a combination of falsehood and general hostility" was "error of

8   constitutional magnitude"); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 281-82

9   (1974) (citing *Beckley* and *Greenbelt*); *see also Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir.

10   1995) ("A showing that [defendant] harbored ill will toward [plaintiffs] . . . cannot, without

11   more, establish actual malice."); *Heuisler v. Phoenix Newspapers, Inc.*, 812 P.2d 1096, 1100

12   (Ariz. Ct. App. 1991) ("Actual malice . . . is not established through a showing of bad

13   motives or personal ill-will."); Restatement § 580A, cmt. d ("Ill will or desire to injure the

14   other party does not in itself have the effect of taking a communication outside the protection

15   of the Constitution.").

16        Rather, "[p]roof of actual malice requires clear and convincing evidence that the

17   defendants published either with knowledge that the defamatory statements were false or

18   with reckless disregard for whether the statements were true or false."  *Heuisler*, 812 P.2d

19   at 1100 (citing *N.Y. Times*, 376 U.S. at 279-86); *see Scottsdale Publ'g, Inc. v. Super. Ct.*

20   *(Romano)*, 764 P.2d 1131, 1134 (Ariz. Ct. App. 1988) ("Proving knowledge of falsity or

21   reckless disregard for truth is defined in legal shorthand as proving 'actual malice.'") (citing

22   *N.Y. Times*, 376 U.S. at 279-80); *Morris v. Warner*, 770 P.2d 359, 367 (Ariz. Ct. App. 1988)

23   ("Actual malice must be established by clear and convincing evidence.").  The defamation

24   plaintiff's burden is demanding – the evidence "'must be *sufficient to permit the conclusion*

25   *that the defendant in fact entertained serious doubts as to the truth of his publication*.'"

26   *Dombey v. Phoenix Newspapers, Inc.*, 724 P.2d 562, 573 (1986) (quoting *St. Amant v.*

27   *Thompson*, 390 U.S. 727, 731 (1968)) (emphasis in original); *see* Restatement § 580A, cmt. f

28   ("Not only does the plaintiff have the burden of raising the issue of knowledge or reckless

1   disregard and of proving the defendant's conduct was outside the scope of the constitutional

2   protection, but the proof must be 'with convincing clarity.'").

3          BWI has not asserted, much less presented clear and convincing evidence, that

4   Defendants in fact doubted the truth of any particular statement.  BWI's evidence that

5   Defendants harbor ill will toward Jaworowicz "falls far short of that necessary to support a

6   reasonable jury finding of actual malice." *Heuisler*, 812 P.2d at 1101; *see Ross v. Duke*, 569

7   P.2d 240, 243 (Ariz Ct. App. 1976) ("The attempt by Ross to show Duke's malice by

8   showing the ill will and past disputes between the two men standing alone simply does not

9   comply with the requirements of the *New York Times* test."); *Carboun v. City of Chandler*,

10  No. CV-03-2146-PHX-DGC, 2005 WL 2408294, at *8 (D. Ariz. Sept. 27, 2005) (evidence

11  that the defendant harbored "longstanding ill will" towards the plaintiff insufficient to show

12  actual malice); *see also Sewell v. Brookbank*, 581 P.2d 267, 271 (Ariz. Ct. App. 1978) (the

13  court must decide whether "there is any evidence of malice to go to the jury"); *Aspell*, 595

14  P.2d at 193 ("[W]here there is no evidence of malice, the court can dispose of the issue.").[8]

15         Moreover, the Supreme Court has made clear that the clear and convincing evidence

16  standard must be considered when ruling on a summary judgment motion – the court must

17  determine whether the evidence presented would enable a reasonable jury to find that actual

18  malice had been shown by clear and convincing evidence.  *See Anderson*, 477 U.S. at 257.

19  In addition to the fact that BWI has failed to correctly address actual malice – presenting

20  evidence of ill will, not evidence of actual malice as required for defamation – BWI has not

21  presented sufficient evidence to prove actual malice clearly and convincingly.

22              **2.    Negligence.**

23         BWI asserts that triable issues exist as to whether Defendants acted negligently.

24

25         [8]Several posts authored by James Dial contain statements to the effect that members
26  fear the BWI leadership.  *See* Dkt. #339 ¶¶ 106-11 (citing posts 3, 34, 45, and 46).  BWI has
    cited evidence for the proposition that the Dials have "fail[ed] to identify anyone who is
27  scared."  Dkt. #408 ¶¶ 106-11.  Even when construed in BWI's favor, however, the cited
    deposition testimony does not support a finding of actual malice with "'convincing clarity.'"
28  *Carboun*, 2005 WL 2408294, at *8 (quoting *Dombey*, 724 P.2d at 576).

1  Dkt. #407 at 24 & n.11.  The only evidence BWI cites in support of this assertion is the BWI

2  bylaws.  *Id.* (citing Dkt. #408 ¶¶ 114, 129).  BWI claims that certain provisions of the bylaws

3  show that James Dial acted negligently in making defamatory statements relating to the BWI

4  director certification and ballot processes.  *See id.*; Dkt. #341 (posts 12 and 39).

5         In the defamation context, negligence is the failure to act "reasonably in attempting

6  to discover the truth or falsity or the defamatory character of the publication[.]"  *Peagler*, 560

7  P.2d at 1222 (citing Restatement § 580B).  BWI's mere citation to the BWI bylaws does not

8  support a finding of negligence.  BWI has cited no evidence showing that James Dial has

9  read the bylaws or was aware of the specific provisions relating to the director certification

10  and ballot processes.  Nor has BWI otherwise presented evidence that Defendants acted

11  unreasonably with respect to the accuracy of the statements they made.

12               **3.**    **Fault Summary.**

13         BWI has failed to present evidence from which a reasonable jury could find that the

14  named Defendants acted either with actual malice or negligence.  Thus, regardless of whether

15  BWI is a limited public figure or a mere private party, Defendants are entitled to summary

16  judgment with respect to the 50 statements made by the Dials and Unruh.  *See Celotex*, 477

17  U.S. at 322.  Given this ruling, the Court need not address Defendants' other arguments

18  regarding the 50 allegedly defamatory statements.

19           **D.**    **Are Defendants Immune from Liability under the CDA?**

20         Section 230 of the CDA immunizes providers and users of interactive computer

21  services against liability for defamation arising from third-party content:  "No provider or

22  user of an interactive computer service shall be treated as the publisher or speaker of any

23  information provided by another information content provider.'"  47 U.S.C. § 230(c)(1).

24  This grant of immunity applies only if the interactive computer service provider is not also

25  "'responsible, in whole or in part, for the creation or development of' the offending content."

26  *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162

27  (9th Cir. 2008) (en banc) (quoting 47 U.S.C. § 230(f)(3)).  Defendants argue that the CDA

28  grants immunity to James Furber, Nidrah Dial, and Loren Unruh for the posts they did not

1  create or develop.  Dkt. ##338 at 15, 403 at 11.

2      BWI cites *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), for the proposition that

3  the immunity provisions of the CDA may be read consistently with the common law tort of

4  defamation.  Dkt. #407 at 25.  But as *Doe* recognized, this Circuit has held that CDA

5  immunity applies to state law defamation claims.  347 F.3d at 659-60 (citing *Batzel v. Smith*,

6  333 F.3d 1018 (9th Cir. 2003)); *see Batzel*, 333 F.3d at 1020 (stating that in enacting the

7  CDA, "Congress . . . has chosen for policy reasons to immunize from liability for defamatory

8  or obscene speech 'providers and users of interactive computer services' when the

9  defamatory or obscene material is 'provided' by someone else."); *see also Carafano v.*

10  *Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) (same).

11          **1.      James Furber.**

12      BWI contends that Furber is not entitled to CDA immunity for 12 statements he

13  created and posted on the website.  Dkt. #407 at 27-28; *see* Dkt. #59-2 at ¶ 11, Exs. A-L.

14  Furber does not seek immunity with respect to those statements.  Rather, Defendants argue

15  that they are immune with respect to statements they did not create or develop.  Dkt. ##338

16  at 15, 403 at 11.

17      BWI also contends that Furber is not entitled to CDA immunity because he created

18  the website homepage to solicit content from others and therefore is a content provider.

19  Dkt. #407 at 27-28.  But the homepage does not explicitly solicit tortious material.  *See*

20  Dkt. #365 at 26-27.  BWI claims that the homepage impliedly suggests that visitors should

21  make statements defaming BWI.  The Court does not agree.  But even if this were true, it is

22  insufficient to strip Furber of CDA immunity.  *See Fair Housing*, 521 F.3d at 1173-74.

23      BWI asserts that Furber created titles for 10 defamatory posts.  Dkt. #407 ¶ 28 (citing

24  Dkt. #408-4 ¶¶ 65-66).  The cited evidence does not support this assertion.  Furber testified

25  that as the website administrator he posted on the website the content of e-mails he received

26  from others.  Dkt. #371 at 9.  BWI has presented no evidence showing that Furber created

27  titles for the e-mails he posted on the website.

28      Finally, BWI claims that Furber is a content provider because he created and posted

a "Site Master Notice Post" stating that some posts were being moved to an alternative website.  Dkt. #407 at 29.  While BWI asserts that the statement was false, *see id.*, BWI does not contend that the statement was defamatory, *see* Dkt. #371 at 79-95.

The Court concludes that Furber is entitled to CDA immunity for the posts he did not create or develop.

### 2.    Loren Unruh.

BWI contends that Unruh has solicited content from others through his marketing of the website.  Dkt. #407 at 29 (citing Dkt. #408-4 ¶¶ 74-79).  But BWI has presented no evidence that Unruh solicited *defamatory* material.  Unruh therefore is entitled to CDA immunity for the posts he did not create.  *See Fair Housing*, 521 F.3d at 1173-74.

### 3.    Nidrah Dial.

BWI argues that Nidrah Dial is not entitled to CDA immunity with respect to the statements she typed and posted on the website for her husband.  Dkt. #407 at 30. Defendants dispute that Mrs. Dial did anything more than act as Mr. Dial's scrivener. Dkt. ##338 at 17, 403 at 14.  Mr. Dial testified that Mrs. Dial helped him decide which statements should be posted on the website.  Dkt. #377 at 60.  A jury reasonably could conclude from this testimony that the statements posted on the website by Ms. Dial were the result of a collaborative effort between the Dials.  The Court will deny summary judgment for Mrs. Dial based on CDA immunity.  *See Fair Housing*, 521 F.3d at 1166-67 (a person is "responsible" at least "in part" for statements made as a result of a collaborative effort). Mrs. Dial is nonetheless entitled to summary judgment on each post created in connection with her husband that are part of the 50 posts addressed in Defendants' motion because, as shown above, BWI has failed to present sufficient evidence of fault with respect to these posts.

## IV.    The Tortious Interference Claims (Counts Nine and Ten).

BWI alleges in count nine that Defendants have tortiously interfered with BWI's prospective economic advantage with its members and prospective members.  Dkt. #153-2 ¶ 204.  BWI alleges in count ten that Furber tortiously interfered with BWI's contracts with

its members.  *Id.* ¶¶ 227-28.  To establish tortious interference, BWI must show a valid

contractual relationship or business expectancy, knowledge of the relationship or expectancy

on the part of Defendants, intentional and improper interference with the relationship or

expectancy causing a termination of the relationship or expectancy, and resulting damages.

*See Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985), *superseded*

*in other respects by* A.R.S. § 23-1501.

Defendants argue that the tortious interference claims fail as a matter of law because

BWI's evidence is insufficient to support a finding of improper interference and causation.

Dkt. ##338 at 36-37, 403 at 22-23.  With respect to the element of causation, Defendants

argue that BWI has presented no evidence showing the loss of a member or prospective

member as a result of the allegedly wrongful posts.  *Id.*  In response, BWI cites to posts

encouraging BWI members to join Magnuson Hotels, a competitor of BWI.  Dkt. #408-4

¶ 141; *see* Dkt. #389 at 73-119.  BWI contends that Defendants' failure to remove the

Magnuson posts from the website is sufficient to support a finding of tortious interference.

Dkt. #407 at 34.

BWI has presented evidence that the number of member terminations increased

significantly in 2005, 2006, and 2007.  Dkt. 408-4 ¶ 165.  BWI asserts that this "empirical

evidence strongly suggests a causal link between Defendants' wrongful conduct and the

increase in self-termination" (*id.* ¶ 166), but BWI has presented no evidence as to why

members decided to terminate their relationship.  The mere increase in member terminations

is not sufficient to hold Defendants liable for tortious interference.[9]

Even if the Court were to assume that the Magnuson posts caused BWI to lose

members or prospective members, BWI has not shown that the posts were improper.[10]  BWI

---

[9]BWI cites to the report of its expert witness, Dwight Duncan, in support of its causation argument.  Dkt. #408-4 ¶ 166.  Mr. Duncan, however, expressed no opinion on causation.  *See* Dkt. ##339 ¶¶ 8, 11; 339-9 ¶ 2; Dkt. ##407 at 35-36, 408-4 ¶ 171.

[10]BWI asserts that James Dial has admitted that the Magnuson posts are improper (Dkt. ##407 at 34, 408-4 ¶ 142), but the cited evidence does not support this assertion.  *See*

does not address the seven factors for determining whether interference with a contractual relationship or business expectancy is improper.  *See Wagenseller*, 710 P.2d at 1042-43 (adopting factors set forth in Restatement § 767).  BWI has shown only that someone from a competing chain of hotels posted messages on the website encouraging BWI members to join the competitor, but a "business-driven motive, in and of itself, is not an improper motive."  *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691,695 (Ariz. Ct. App. 2007).  Arizona courts have made clear that "'a competitor does not act improperly if his purpose at least in part is to advance his own economic interests.'"  *Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2005) (citation omitted); *see Bar J Bar Cattle Co. v. Pace*, 763 P.2d 545, 548 (Ariz. Ct. App. 1988) ("One who interferes with the contractual rights of another for a legitimate competitive reason does not become a tortfeasor simply because he may also bear ill will toward his competitor.") (citing Restatement § 768, cmt. b); *Wagenseller*, 710 P.2d at 1043  ("It is difficult to see anything defensible, in a free society, in a rule that would impose liability on one who honestly persuades another to alter a contractual relationship.").

 "'If the interferer is to be held liable for committing a wrong, his liability must be based on more than the act of interference alone.'"  *Neonatology*, 164 P.3d at 694 (quoting *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1026 (Ariz. 2005) (en banc)); *see Wagenseller*, 710 P.2d at 1043.  There is "'no liability absent a showing that defendant's actions were improper as to motive or means.'"  *Id.* at 693-94.  BWI has "neither presented evidence of anything more nefarious than business competition nor evidence from which a reasonable jury could find that [Defendants] acted improperly."  *Neonatology*, 164 P.3d at 695.  The Court accordingly will grant summary judgment in Defendants' favor with respect to counts nine and ten.  *See id.*; *Miller*, 104 P.3d at 203 (affirming summary judgment where there was no evidence showing that the defendant had acted improperly); *Bar J Bar Cattle*, 763 P.2d at 549 ("In the absence of evidence that [defendant] acted with an improper motive or

---

Dkt. #402 ¶ 142.

1    employed improper means, the trial court properly granted summary judgment."); *see also*

2    *Wagenseller*, 710 P.2d at 1043 ( "If the plaintiff is unable to show the impropriety of the

3    defendant's conduct based on an examination of the[] factors [enumerated in Restatement

4    § 767], the conduct is not tortious.").

5    **V.   Damages.**

6         Defendants argue that they are entitled to summary judgment because BWI has failed

7    to prove damages.  Dkt. ##338 at 4, 403 at 2.  The report of expert witness Dwight Duncan

8    identifies three categories of damages:  excessive member terminations, diversion of BWI

9    employee time, and BWI's out-of-pocket expenses.  Dkt. #339-9 at 7, ¶ 4.

10    **A.   Excessive Member Terminations.**

11         Mr. Duncan has opined that member self-terminations between 2005 and 2007 will

12    result in a loss to BWI of nearly $23,000,000.  *Id.* at 3-4, ¶¶ 4 & 5.3.  Noting that the

13    Freewrites.net website was not created until May 2006, Defendants assert that BWI seeks to

14    justify Mr. Duncan's damages calculation based on anonymous faxes sent in 2005.

15    Dkt. #338 at 8; *see* Dkt. #153-2 ¶¶ 87-89.  The damages calculation is fatally flawed,

16    Defendants contend, because the anonymous faxes have never been produced by BWI and

17    Mr. Duncan has admitted that his analysis regarding increased member terminations is

18    unreliable if Defendants did not send the faxes.  *Id.* at 8-9.

19         In response to Defendants' motion, Plaintiff disclosed, for the first time, faxes and

20    letters purportedly sent by Defendants in 2005.  *See* Dkt. #391.  Defendants object to this

21    evidence on the ground that it is untimely and may not be used on summary judgment under

22    Rule 37(c) of the Federal Rules of Civil Procedure.  Dkt. ##402 ¶ 33, 403 at 3.[11]

23         BWI did not disclose the 2005 faxes and letters until June 25, 2008 – more than a

24    month after Defendants filed their summary judgment motion.  BWI contends that its

25    _____

26        [11]Defendants have filed a separate motion to strike the evidence. Dkt. #399. The
Court will deny the motion because it is not permitted under the Court's rules of practice.

27    LRCiv 7.2(m)(2) (objections to the admission of evidence offered in support of an opposition
brief shall not be made in a separate motion to strike); *see EEOC v. AutoZone, Inc.*, No. 06-

28    CV-0926-PHX-SMM, 2008 WL 2509302, at *2 (D. Ariz. June 19, 2008).

1    untimely disclosure was substantially justified and harmless.  *See* Dkt. #411.  The Court does

2    not agree, but need not resolve this issue because, as discussed below, BWI has failed to

3    present sufficient evidence showing that the 2005 faxes and letters caused the increased

4    member terminations.

5        BWI has approximately 2,400 members. Dkt. #339-9 at 1.  Mr. Duncan notes that an

6    average of 29 BWI members chose to terminate their memberships in 2002, 2003, and 2004.

7    *Id*. Ex. E.  This number increased to 47 terminations in 2005, 55 in 2006, and 54 in 2007.

8    *Id*.  Mr. Duncan does *not* opine that this increase was due to the actions of the Defendants.

9    Dkt. #339-9.  Indeed, BWI concedes that "Mr. Duncan has not and will not testify that

10   Defendants' activities did in fact cause the increase in self terms[.]" Dkt. #407 at 35-36; *see*

11   *also* Dkt. #408-4 ¶ 171.  Mr. Duncan concludes, nonetheless, that the increased terminations

12   will eventually cost BWI almost $23,000,000.   BWI seeks to recover these losses from

13   Defendants.

14       BWI has produced no causation expert.  No business analyst has examined the

15   increased terminations and opined that they were caused by Defendants' faxes and website.

16   In fact, BWI rather surprisingly asserts that "such opinions are beyond the scope of expert

17   testimony."  Dkt. #407 at 36.  This of course is not correct.  Causation experts are used

18   frequently in business and other types of litigation.  *See, e.g.*, *Theme Promotions, Inc. v.*

19   *News Am. Mktg. FSI*, --- F.3d ---, Nos. 06-16230, 06-16341, 2008 WL 3852724, at *9 (9th

20   Cir. Aug. 20, 2008) (denying the defendant's motion for a new trial where the plaintiff's

21   expert helped establish causation with respect to the plaintiff's loss of business); *Cashmere*

22   *& Camel Hair Mfrs. Institute v. Saks Fifth Ave.*, 284 F.3d 302, 317 (1st Cir. 2002) (reversing

23   summary judgment for the defendant on a false advertising claim in part because the plaintiff

24   was entitled to rely on the "testimony of expert witnesses to demonstrate causation");

25   *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 257 (3d Cir. 1999) (expert report of antitrust plaintiff

26   was "sufficient evidence of causation to defeat a motion for summary judgment"); *Wood v.*

27   *Cendant Corp.*, No. 03-CV-298-TCJ-FHM, 2006 WL 964749, at *12 (N.D. Okla. Apr. 11,

28   2006) (denying summary judgment where the plaintiff's expert supplied a "plausible

1  causation link" between the defendant's profits and infringing activity); *see also Gorney v.*

2  *Meaney*, 150 P.3d 799, 804 (Ariz. Ct. App. 2007) (expert testimony required to show medical

3  treatment caused injury to plaintiff) (citation omitted).

4        In the absence of expert testimony, BWI asserts that "reasonable jurors may infer from

5  BWI's evidence on this issue that the self-termination increases were due to Defendants'

6  actions." *Id.*  But BWI fails to present evidence from which such an inference reliably can

7  be drawn.  Mr. Duncan notes that the number of terminations increased by 18 in 2005, 26 in

8  2006, and 25 in 2007 – out of 2,400 BWI members.  Dkt. #339-9, Ex. E.  This amounts to

9  a modest increase from an average of 1.2% terminations each year (29 out of 2,400 for 2002-

10  2004) to approximately 2.2% terminations each year (an average of 52 out of 2,400 for 2005-

11  2007).  BWI makes no attempt to address the many factors that might have influenced these

12  additional termination decisions, such as economic conditions, sales of member hotels, hotel

13  closures, departures to join competing organizations, or changes in BWI policies.  BWI

14  presents no affidavits, depositions, or other documents from the former members stating why

15  they terminated their memberships.  BWI presents no evidence that it tracked reasons for

16  member terminations or conducted exit interviews.  Nor does BWI dispute that its corporate

17  officers and board members have failed to identify a single member who terminated his or

18  her relationship with BWI because of Defendants' faxes or website.  *See* Dkt. ##339, 408 ¶¶

19  14-23.[12]

20        In short, the only evidence BWI presents in support of it causation claim is the fact

21  that member terminations increased modestly during the same years that Defendants

22

23        [12]In its discussion of the tortious interference claim, BWI does assert that a number
of former BWI members left to join a competing organization known as Magnuson Hotels.

24  Dkt. #407 at 34.  As noted above, the tortious interference claim fails for other reasons.  BWI
has not presented evidence that members departed BWI to join Magnuson Hotels because

25  of the allegedly wrongful actions of Defendants.  And even if one could assume that some
members made the change because Magnuson Hotels made posts on Freewrites.net – BWI

26  has presented no evidence of that fact – BWI does not claim that the Magnuson posts
constituted defamatory statements by Defendants, nor other kinds of wrongful conduct

27  besides the now-dismissed claim for tortious interference.  The Magnuson Hotels evidence

28  therefore does not support BWI's claim for damages on the remaining counts in this case.

allegedly were sending faxes and operating their website.  Given the multitude of potential reasons for member terminations, this kind of timing evidence is simply too thin a reed to support a jury's award of $23,000,000 in damages.  *See Workman v. Kroger Ltd. P'ship I*, No. 5:06-cv-0046, 2007 WL 2984698, at *8 (S.D. W. Va. Oct. 11, 2007) (lost business damages were not recoverable "absent expert testimony, proof of causally related lost income, or former clients' testimony that they refuse to do business with [the plaintiff] because of the [defamatory] posting").  BWI must show a "reasonable connection" between Defendants' conduct and BWI's loss of members.  *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990) (en banc).  Absent evidence as to why members terminated their relationship with BWI, "the jury would be left to sheer speculation on the issue of causation."  *Shaner v. Tucson Airport Auth., Inc.*, 573 P.2d 518, 522 (Ariz. Ct. App. 1977). The Court will grant summary judgment in Defendants' favor with respect to damages based on excessive member terminations.

### B.    Diversion of Employee Time and Out-of-Pocket Expenses.

BWI seeks nearly $900,000 for the "diversion of employee time" and "out-of-pocket expenses" allegedly incurred as a result of Defendants' conduct.  Dkt. #339-9 at 7.  These categories of claimed damages are not recoverable as a matter of law, Defendants contend, because they merely represent BWI's attorneys' fees.  Dkt. ##338 at 10, 403 at 5-6.

BWI agrees that attorneys' fees for outside counsel are not recoverable as damages. Dkt. #407 at 37 n.26. The parties dispute, however, whether the amount of the claimed damages includes attorneys' fees and whether BWI may recover for the "diverted time" of its in-house counsel.  *Id.*; Dkt. ##338 at 10, 403 at 5-6.

The Court will grant summary judgment in Defendants' favor to the extent BWI seeks to recover outside counsel fees in the form of damages.  *See Motorola, Inc. v. Fed. Exp. Corp.*, 308 F.3d 995, 1007 n.13 (9th Cir. 2002) ("We recognize that costs and attorney's fees are not 'damages[.]'").  The Court cannot, on the present record, determine whether BWI may recover for the alleged diverted time of its in-house counsel.  BWI has presented no evidence describing the nature of the work performed by its in house counsel.  *See Travelers*

1    *Indem. Co. of Ill. v. Millard Refrigerated Servs.*, No. 8:00CV91, 2002 WL 2005717, at *1

2    (D. Neb. Sept. 3, 2002) (in-house counsel fees are generally recoverable for work involving

3    substantive legal services but are not permitted for time devoted to acting as a liaison

4    between the corporation and outside attorneys).  The Court will deny summary judgment

5    with respect to this issue.

6          **IT IS ORDERED:**

7          1.    Defendants' motion for summary judgment (Dkt. #338) is **granted in part** and

8                **denied in part** as follows:

9                a.    Summary judgment is granted in favor of Defendant Nidrah Dial with

10                      respect to the contract-related claims (counts one, three, and five).

11               b.    Summary judgment is granted in favor of Defendants James Dial and

12                      Loren and Gayle Unruh on the breach of contract claim (count one)

13                      with respect to the alleged use of BWI equipment and disclosure of

14                      BWI confidential information.  Summary judgment is denied on the

15                      breach of contract claim with respect to Defendants' use of BWI marks.

16               c.    Summary judgment is granted in favor of Defendants on the claims for

17                      breach of the implied covenant of good faith and fair dealing (count

18                      three) and breach of implied contract (count five).

19               d.    Summary judgment is granted in favor of Defendants on the defamation

20                      claim (count eight) with respect to the 50 statements they admittedly

21                      made or published and any statements they did not create or develop.

22               e.    Summary judgment is granted in favor of Defendants on the tortious

23                      interference claims (counts nine and ten).

24               f.    Summary judgment is granted in favor of Defendants with respect to

25                      damages based on excessive member terminations. Summary judgment

26                      is denied with respect to damages based on diverted employee time and

27                      out-of-pocket expenses.

28          2.    Defendants' motion to strike (Dkt. #399) is **denied**.

1       3.      The Court will set a final pretrial conference by separate order.

2    DATED this 5th day of September, 2008.

_____
David G. Campbell
United States District Judge